[No. B079917. Second Dist., Div. Five. June 1, 1995.]

ROBERT A. VILLA, Plaintiff and Appellant, v.
GLEN McFERREN, Defendant and Respondent.

**[Opinion certified for partial publication.\*]**

---

*\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part III.E.

**COUNSEL**

Lynberg & Watkins and Judith Gold for Plaintiff and Appellant.

Weissmann, Wolff, Bergman, Coleman & Silverman and Michael Eidel for Defendant and Respondent.

**OPINION**

**TURNER, P. J.—**

## I. INTRODUCTION

The complaint alleged a conspiracy between an insurer and a psychiatrist to deprive the plaintiff, Robert A. Villa, of disability benefits. In November

1993, the trial court entered a summary judgment in favor of defendant, Dr. Glen McFerren, a psychiatrist. Plaintiff appealed. We conclude defendant, in his moving papers, did not meet his burden of showing all of plaintiff's causes of action had no merit in that one or more elements of his claims could not be established. In his moving papers, defendant presented insufficient evidence of his nonparticipation in the alleged conspiracy. Rather, defendant relied on plaintiff's deposition testimony. At his deposition, plaintiff admitted he personally was unaware of any communication between defendant and the insurer other than one letter. That one letter requested defendant to evaluate plaintiff for the insurer. There was no reason to believe plaintiff would have been present when the alleged conspirators purportedly planned to deny him his disability benefits. The evidence presented by defendant, including plaintiff's deposition testimony, was insufficient concerning the existence of a conspiracy so as to shift the burden to plaintiff to show a triable issue under Code of Civil Procedure section 437c as amended in 1992 and effective January 1, 1993.[1] However, the opposition papers filed on behalf of plaintiff filled the evidentiary gap and sufficiently demonstrated defendant had no contact directly or indirectly with the insurer, thereby showing that the conspiracy claim, an essential element of all of the causes of action applicable to defendant, had no merit. Hence, we conclude in the published portion of this opinion that under the 1992 amendments to section 437c which were effective January 1, 1993, the trial court correctly granted the summary judgment motion. Accordingly, we affirm the summary judgment.

## II. THE COMPLAINT AND EVIDENCE IN THE SEPARATE STATEMENTS

### A. *The allegations in the complaint*

The facts as alleged in the complaint follow. Plaintiff was a trial attorney. In 1990, he suffered a "serious and debilitating" heart attack. As a result, he was permanently disabled from performing his occupation as a trial attorney. His insurer commenced disability benefits payments; but thereafter "sought by threats, intimidation, breaches of contract and other wrongful conduct" to terminate the benefits. The insurer, Minnesota Mutual Life Insurance (Minnisota Mutual), according to the complaint, hired a psychiatrist, a Dr. Malitiz, and directed him to prepare a biased report. The insurer scheduled an appointment for plaintiff with Dr. Malitiz. For unknown reasons, that appointment was canceled. In furtherance of the goal to deny benefits due under the disability policy, the insurer then conspired with defendant, a psychiatrist, to evaluate plaintiff and prepare a report. That report was to be favorable to the insurer; "one in which [defendant] would report that plaintiff was somehow dishonest with respect to his disability . . . ." Defendant

---

[1] All further statutory references are to the Code of Civil Procedure.

agreed to prepare the report with knowledge it would be used by the insurer to terminate plaintiff's benefits. Plaintiff brought a tape recorder to his appointment with defendant. Defendant also "knew or had reason to know" plaintiff would lose his disability benefits if the examination was not completed. Nevertheless, defendant ordered plaintiff not to turn the tape recorder on and to leave his office. Defendant then "falsely reported" to the insurer plaintiff had canceled the appointment. The insurer subsequently ceased payments of disability benefits to plaintiff for failure to submit to an independent psychiatric examination. The complaint asserted causes of action against defendant for being a member of a tortious conspiracy to deprive plaintiff of contractual benefits and intentionally inflict severe emotional distress.

The foregoing allegations do not provide a basis for a damage claim on the theory defendant conspired to deny plaintiff the benefits of the implied covenant of good faith and fair dealing under the terms of plaintiff's disability policy with Minnesota Mutual. Because defendant was not a party to the insurance policy, he may not be liable for a conspiracy to violate the implied covenant of good faith and fair dealing. (*Doctors' Co.* v. *Superior Court* (1989) 49 Cal.3d 39, 45-48 [260 Cal.Rptr. 183, 775 P.2d 508]; *Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 576 [108 Cal.Rptr. 480, 510 P.2d 1032].) However, *Doctors' Co.,* under existing Court of Appeal authority, does not preclude a cause of action for conspiracy to intentionally inflict severe emotional distress by a medical care provider hired by an insurer. There is Court of Appeal authority for the proposition that an insurer's agent may be held liable for conspiracy to intentionally inflict severe emotional distress. (*Younan* v. *Equifax, Inc.* (1980) 111 Cal.App.3d 498, 511 [169 Cal.Rptr. 478], cited with approval in *Doctors' Co.* v. *Superior Court, supra,* 49 Cal.3d at p. 48.) Hence, assuming *Younan* v. *Equifax, Inc., supra,* 111 Cal App.3d at page 511 remains a valid statement of California law, the sole theory that plaintiff may pursue is that defendant was a member of a conspiracy to intentionally inflict severe emotional distress.[2]

*B.   Evidence concerning the alleged conspiracy referred to in the separate statements*

1.   *Defendant's evidence*

The evidence proffered by defendant was as follows. As will be noted, the evidence cited by defendant did not directly address the purported conspiracy. Plaintiff was insured by Minnesota Mutual under a disability policy.

---

[2]We do not address the issue of whether *Younan* v. *Equifax, supra,* 111 Cal.App.3d at page 511 remains a valid statement of law or would otherwise be applicable to the facts of this case. The parties have not briefed that issue and we can resolve this appeal by determining that there was no merit to the conspiracy theory.

The policy, which went into effect on August 15, 1985, provided a disability payment for a sickness which resulted in the "inability to perform the substantial and material duties" of the insured's regular occupation. Under the terms of the policy in this case, plaintiff's occupation was defined as "trial attorney." Defendant was a psychiatrist. He received a letter dated January 8, 1992, from Minnesota Mutual, which provided background information concerning plaintiff's disability claim. The January 8, 1992, letter stated: prior to his disability, plaintiff, a lawyer, had spent "all of his time in court involved in litigation activities"; he had suffered "a coronary ischemic event" for which he received an "angioplasty"; after the development of the heart problems, plaintiff had returned to work on a limited basis; plaintiff "ha[d] changed his practice from criminal and divorce cases to civil cases"; a cardiologist had indicated plaintiff would never be able to return to his occupation as a full-time litigator; a psychologist was treating plaintiff for "dysthymia"; the psychologist concluded plaintiff could not "return to his pre-disability activities"; plaintiff had filed a disability claim with Minnesota Mutual; an appointment with defendant for plaintiff had been scheduled for February 6, 1992; and defendant was to "perform a psychiatric exam" of plaintiff. After delineating the scope of the psychiatric examination, the letter stated: "Also please provide insight as to why such a permanent change in [plaintiff's] work activities is necessary." The January 8, 1992, letter to defendant warned that if a lawyer accompanied plaintiff, the examination was to be "cancel[led]." The January 8, 1992, letter from Minnesota Mutual to defendant made reference to medical records. However, defendant failed to include those records with the summary judgment motion.

Plaintiff appeared for the examination. He brought a tape recorder. He thought he had a right to tape-record the examination. Plaintiff thought that since the Code of Civil Procedure provided for the tape recording of psychiatric examinations, the Minnesota Mutual policy was subject to the limited right to tape-record a mental examination under the authority of section 2032, subdivision (g)(2).[3] At his deposition, plaintiff described defendant's response to the production of the tape recorder: "He phrased it this way: That he would not proceed with the examination or interview, as you call it, with the tape recorder."

Additional evidence relied upon by defendant included a deposition transcript of one of his employees, Donna Koukal. She told another person in

---

[3] Section 2032, subdivision (g)(2) states in pertinent part, "The examiner and examinee shall have the right to record a mental examination on audio tape." Section 2032, subdivision (g)(2) is part of the Civil Discovery Act of 1986 which regulates the conduct of stipulated to or court ordered mental examinations of litigants. Section 2032, subdivision (g)(2) does not purport to regulate the conduct of psychiatric examinations in any other circumstances.

reference to plaintiff: "The patient had insisted on wanting the session taped, tape-recorded, and in our office we've never done that. [Defendant] had stated no, and was more than willing to evaluate the patient. However, the patient chose to leave since it could not be recorded." When asked at her deposition where she obtained the information that plaintiff "chose to leave," Ms. Koukal testified: "That's my own viewpoint. The patient left because it couldn't be tape-recorded." Minnesota Mutual agreed to pay a $100 "no-show" fee because of the aborted examination.

Defendant offered no competent evidence which proved the allegation of a conspiracy could not be established.[4] The only competent evidence offered was plaintiff's deposition testimony. That testimony indicated plaintiff, personally, was unaware of any communication between defendant and Minnesota Mutual other than a letter in which the insurer requested defendant undertake an independent examination of its insured. The deposition testimony was as follows: "[Q] . . . [A]m I also correct that as of February 6, 1992, [the date of plaintiff's appointment with defendant] you didn't know how many communications [defendant had with the insurer] or what the extent of that communication was? [¶] [A] Exactly. [¶] [Q] As of today, as you sit here today, the only communication which you are aware of between Dr. McFerren's office and Minnesota Mutual [the insurer], which communications took place on or prior to February 6, 1992, is this letter? [¶] [A] Yes, this letter is the only letter that I have seen. As my counsel said, I saw this today. It is a communication between Minnesota Mutual and the doctor." The letter plaintiff referred to in his deposition testimony set forth the background of the disability claim and requested defendant perform a psychiatric examination. There was no basis for concluding plaintiff would have been present to observe the alleged members of the conspiracy discussing or writing one another about the purported plan to deny him his disability benefits.[5] The foregoing was the totality of the admissible evidence presented by defendant in support of the summary judgment motion. Further, it

---

[4]Defendant did offer in evidence, as part of his moving papers, a letter he wrote to the insurer after plaintiff's appointment. In the letter, defendant described what had happened. Defendant also submitted a declaration purporting to incorporate that letter. However, plaintiff's objections to the letter and declaration were sustained. The trial court, in full compliance with its obligations to rule on evidentiary objections (§ 437c, subds. (b) and (c), *Golden West Baseball Co.* v. *Talley* (1991) 232 Cal.App.3d 1294, 1301, fn. 4 [284 Cal.Rptr. 53]), sustained and overruled various evidentiary objections. Defendant has not challenged that ruling on appeal. As a result, any issue concerning the correctness of the trial court's evidentiary rulings has been waived. (*Tiernan* v. *Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4 [188 Cal.Rptr. 115, 655 P.2d 317]; *Johnston* v. *Board of Supervisors* (1947) 31 Cal.2d 66, 70 [187 P.2d 686] disapproved on another point in *Bailey* v. *County of Los Angeles* (1956) 46 Cal.2d 132, 139 [293 P.2d 449].)

[5]The letter plaintiff referred to in his deposition testimony was that dated January 8, 1992, which is summarized in the body of this opinion. It was addressed to defendant from

was the only evidence presented in support of the summary judgment motion in an effort to rebut the conspiracy allegations. As will be noted later, this was not sufficient to shift the burden of proof to plaintiff to prove a triable issue existed as to the conspiracy allegation.

## 2. *Plaintiff's evidence*

However, as will later be explained, the evidence in opposition did provide a sufficient basis for concluding plaintiff could not establish the existence of a conspiracy. Defendant's deposition transcript was introduced by plaintiff. Part of the areas of inquiry reflected in the transcript related to whether defendant had been told by Minnesota Mutual or a company which selected him on behalf of the insurer that he had to be a board certified physician. Defendant testified at his deposition, "I personally can't even remember a time when I have talked with any of these companies prior to the events . . . that led to this deposition that I have spoke to them personally myself." At another point, defendant testified he did not even know how the entity that arranged for the examination on behalf of the insurer secured his name. Later, defendant stated he had never personally even submitted any "credentials, . . . resume" or *curriculum vitae* to any entity that had requested he perform an evaluation. Defendant, according to his deposition testimony, only became aware there was a dispute between

Minnesota Mutual and stated as follows: "Dear Dr. McFerren: [¶] Mr. Villa has a disability claim with The Minnesota Mutual Life Insurance Company. In order to help evaluate his claim, arrangements have been made for him to be examined by you on February 6, 1992, at 1:30 p.m. The following provides a brief background regarding Mr. Villa's claim and outlines what your assessment needs to cover. [¶] Mr. Villa is a 51 year old trial attorney who had a coronary ischemic event on February 22, 1990. His right coronary artery was abnormal and an angioplasty was performed. Prior to disability, Mr. Villa reports spending all of his time in court involved in litigation activities. [¶] Mr. Villa has returned to work on a limited basis. He reports being unable to perform litigation due to stress involved and indicates he has changed his practice from criminal and divorce cases to civil cases. [¶] Mr. Villa's cardiologist has not imposed any specific restrictions but states Mr. Villa will never be able to return to his former activities because of the stress involved. Mr. Villa is also being treated by a psychologist for dysthymia. She also indicates he will not be able to return to his pre-disability activities. Enclosed are copies of the medical information we do have regarding Mr. Villa's disability. [¶] Please perform a psychiatric exam including MMPI and provide us with a detailed narrative report including objective clinical findings, MMPI results, symptoms and the severity of the symptoms, diagnosis using DSM-III-R codes, any occupational limitations and why they exist, recommended treatment and prognosis. Also please provide insight as to why such a permanent change in Mr. Villa's work activities is necessary. [¶] Dr. McFerren, in the event that Mr. Villa arrives at the exam accompanied by an attorney, please cancel the exam and forward your bill to us. We have explained to Mr. Villa that representation during the exam is unnecessary and do not anticipate a problem. [¶] Please send the report and billing to The Minnesota Mutual Life Insurance Company . . . . If the examination is rescheduled or if you have any questions or concerns regarding our request or the information we have provided regarding Mr. Villa, please call our toll-free number . . . . [¶] Your cooperation and assistance are appreciated."

Minnesota Mutual and plaintiff during the February 6, 1992, aborted examination. In other words, defendant first learned of the existence of the dispute from plaintiff on February 6, 1992.

### III. DISCUSSION

#### A. *Standard of review*

Summary judgment is granted when there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law. (§ 437c, subd. (c).) We review the trial court's decision to grant the summary judgment motion de novo. (*Jambazian v. Borden* (1994) 25 Cal.App.4th 836, 844 [30 Cal.Rptr.2d 768]; *Daniels v. DeSimone* (1993) 13 Cal.App.4th 600, 607 [16 Cal.Rptr.2d 615]; *Wilson v. Blue Cross of So. California* (1990) 222 Cal.App.3d 660, 670 [271 Cal.Rptr. 876].)

#### B. *Burden of proof*

We review the issue of the allocation of the burden of proof under the 1992 amendments to the summary judgment law as a question of statutory construction. We must interpret the statute to carry out the Legislature's intent. Our Supreme Court has noted: "When interpreting a statute our primary task is to determine the Legislature's intent. [Citation.] In doing so we turn first to the statutory language, since the words the Legislature chose are the best indicators of its intent." (*Freedom Newspapers, Inc. v. Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 826 [25 Cal.Rptr.2d 148, 863 P.2d 218]; *People v. Jones* (1993) 5 Cal.4th 1142, 1146 [22 Cal.Rptr.2d 753, 857 P.2d 1163].)  Further, our Supreme Court has noted: " 'If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature (in the case of a statute) . . . .' " (*Delaney v. Superior Court* (1990) 50 Cal.3d 785, 798 [268 Cal.Rptr. 753, 789 P.2d 934].) However, the literal meaning of a statute must be in accord with its purpose as our Supreme Court noted in *Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 658-659 [25 Cal.Rptr.2d 109, 863 P.2d 179] as follows: "We are not prohibited 'from determining whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute. The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.] Literal construction should not prevail if it is contrary to the legislative intent apparent in the [statute]' " In *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755

P.2d 299], our Supreme Court added: "The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. [Citations.] An interpretation that renders related provisions nugatory must be avoided [citation]; each sentence must be read not in isolation but in light of the statutory scheme [citation] . . . ."

■ The law in effect in 1993 when defendant's summary judgment motion was filed and granted provided as follows: "Any party may move for summary judgment in any action or proceeding if it is contended that the action has no merit or that there is no defense to the action or proceeding." (§ 437c, subd. (a).) The summary judgment statute provided further: "(n) For purposes of motions for summary judgment . . . : [¶] . . . [¶] (2) A defendant . . . has met *his or her burden* of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action. *Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . .* to show that a triable issue of one or more material facts exists as to that cause of action." (§ 437c, former subd. (n)(2), as amended by Stats. 1992, ch. 1348, italics added.)[6] Prior to the 1992 amendments to section 437c, the burden of proof rested on the moving party to prove the right to summary judgment. (See *Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46]; *Vesely* v. *Sager* (1971) 5 Cal.3d 153, 169 [95 Cal.Rptr. 623, 486 P.2d 151].) The 1992 amendments to section 437c which became effective

---

[6]Section 437c was again amended in 1993. At that time, the language in former section 437c, subdivision (n)(2) concerning the defendant's burden of proof on summary judgment and shifting it to plaintiff was moved to subdivision (o)(2). (Stats. 1993, ch. 276.) Section 437c, subdivision (o)(2) provided, effective January 1, 1994, and at present, as follows: "(o) For purposes of motions for summary judgment and summary adjudication: [¶] . . . [¶] (2) A defendant or cross-defendant has met his or her burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action. Once the defendant or cross-defendant has met that burden, the burden shifts to the plaintiff or cross-complainant to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto. The plaintiff or cross-complainant may not rely upon the mere allegations or denials of its pleadings to show that a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action or a defense thereto." Among the purposes of the 1993 amendment was to legislatively abrogate the line of cases beginning with *Barnes* v. *Blue Haven Pools* (1969) 1 Cal.App.3d 123, 136-128 [81 Cal.Rptr. 444], that a moving defendant did not sustain her or his burden of proof merely by relying upon a plaintiff's factually devoid interrogatory responses. (*Union Bank* v. *Superior Court* (1995) 31 Cal.App.4th 573, 579-594 [37 Cal.Rptr.2d 653].) The present case does not involve the effect of the 1993 amendment on a responding plaintiff's burden of proof. This is because the responding plaintiff's evidence filled in the evidentiary gap in the moving defendant's showing. Further, the present summary judgment motion was heard prior to the effective date of the 1993 legislation further amending section 437c.

January 1, 1993, did not change the requirement that the moving party prove its right to summary judgment. In fact, the language of section 437c, former subdivision (n)(2), which effective January 1, 1994, was moved to subdivision (o)(2), placed the burden with the moving defendant or cross-defendant. The 1992 and 1993 amendments do not shift it to a responding plaintiff or cross-complainant until the moving defendant or cross-defendant has proven a cause of action has no merit because an element of the claim cannot be established or there is a complete defense. The statutory language places the initial burden on the moving party; once it is demonstrated one or more elements of the cause of action cannot be established, the burden then shifts.

Prior to the adoption of the 1992 amendments to section 437c, it was a well-established rule under the pre-January 1, 1993, versions of section 437c that unless the moving party meets its burden, summary judgment could not be ordered, even though the opposing party has not responded sufficiently or at all. Stated differently, in summary judgment litigation occurring prior to January 1, 1993, there was no obligation on the opposing party to show that a triable issue of material fact existed unless and until the moving party had met its burden. (*Vesely* v. *Sager, supra,* 5 Cal.3d at pp. 169-170, superseded by statute on another point, see *Strang* v. *Cabrol* (1984) 37 Cal.3d 720, 724-725 [209 Cal.Rptr. 347, 691 P.2d 1013]; *Rowland* v. *Christian* (1968) 69 Cal.2d 108, 111 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]; *Wright* v. *Fireman's Fund Ins. Companies* (1992) 11 Cal.App.4th 998, 1011-1012 [14 Cal.Rptr.2d 588]; *Chevron U.S.A., Inc.* v. *Superior Court* (1992) 4 Cal.App.4th 544, 548 [5 Cal.Rptr.2d 674]; *Hufft* v. *Horowitz* (1992) 4 Cal.App.4th 8, 13 [5 Cal.Rptr.2d 377]; *Preis* v. *American Indemnity Co.* (1990) 220 Cal.App.3d 752, 757 [269 Cal.Rptr. 617]; *Twain Harte Associates, Ltd.* v. *County of Tuolumne* (1990) 217 Cal.App.3d 71, 79-80 [265 Cal.Rptr. 737]; *Kerr* v. *Rose* (1990) 216 Cal.App.3d 1551, 1560-1561 [265 Cal.Rptr. 597]; *Brunelle* v. *Signore* (1989) 215 Cal.App.3d 122, 127 [263 Cal.Rptr. 415]; *Niederer* v. *Ferreira* (1987) 189 Cal.App.3d 1485, 1498 [234 Cal.Rptr. 779]; *McKnight* v. *Faber* (1986) 185 Cal.App.3d 639, 645 [230 Cal.Rptr. 57]; *Nazar* v. *Rodeffer* (1986) 184 Cal.App.3d 546, 552 [229 Cal.Rptr. 209], abrogated on another point in *Ornelas* v. *Randolph* (1993) 4 Cal.4th 1095, 1103 [17 Cal.Rptr.2d 594, 847 P.2d 560]; *Clendening* v. *Shipton* (1983) 149 Cal.App.3d 191, 195-196 [196 Cal.Rptr. 654]; *Orange County Foundation* v. *Irvine Co.* (1983) 139 Cal.App.3d 195, 199-200 [188 Cal.Rptr. 552]; *Miles Laboratories, Inc.* v. *Superior Court* (1982) 133 Cal.App.3d 587, 593 [184 Cal.Rptr. 98]; *Harman* v. *Mono General Hospital* (1982) 131 Cal.App.3d 607, 613 [182 Cal.Rptr. 570]; *Conn* v. *National Can Corp.* (1981) 124 Cal.App.3d 630, 639 [177 Cal.Rptr. 445]; *O'Shea* v. *Claude C. Wood Co.* (1979) 97 Cal.App.3d 903, 911-912 [159 Cal.Rptr. 125], abrogated by statute on another point, see *Hubbard* v. *Brown* (1990) 50

Cal.3d 189, 194-195 [266 Cal.Rptr. 491, 785 P.2d 1183]; *Tresemer* v. *Barke* (1978) 86 Cal.App.3d 656, 662-663 [150 Cal.Rptr. 384, 12 A.L.R.4th 27]; *Beech Aircraft Corp.* v. *Superior Court* (1976) 61 Cal.App.3d 501, 519-520 [132 Cal.Rptr. 541]; *Kelleher* v. *Empresa Hondurena de Vapores, S.A.* (1976) 57 Cal.App.3d 52, 58 [129 Cal.Rptr. 32]; *Dugar* v. *Happy Tiger Records, Inc.* (1974) 41 Cal.App.3d 811, 818 [116 Cal.Rptr. 412]; *Concerned Citizens of Palm Desert, Inc.* v. *Board of Supervisors* (1974) 38 Cal.App.3d 257, 270-271 [113 Cal.Rptr. 328]; *Residents of Beverly Glen, Inc.* v. *City of Los Angeles* (1973) 34 Cal.App.3d 117, 127 [109 Cal.Rptr. 724]; *Barker* v. *Wah Low* (1971) 19 Cal.App.3d 710, 713 [97 Cal.Rptr. 85]; *Swaffield* v. *Universal Ecsco Corp.* (1969) 271 Cal.App.2d 147, 171 [76 Cal.Rptr. 680]; *de Echeguren* v. *de Echeguren* (1962) 210 Cal.App.2d 141, 147 [26 Cal.Rptr. 562]; *Taliaferro* v. *Taliaferro* (1960) 179 Cal.App.2d 787, 791 [4 Cal.Rptr. 689]; *Southern Pacific Co.* v. *Fish* (1958) 166 Cal.App.2d 353, 365-366 [333 P.2d 133]; see Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 1994) ¶ 10:225, p. 10-62.) Nothing in the language of the 1992 adoption of section 437c, subdivision (n)(2) amendments abrogates this well-established summary judgment requirement that the initial burden rests with the moving party. In fact, the express statutory language places the burden on the moving defendant or cross-defendant. Furthermore, we have carefully reviewed the legislative committee reports prepared in connection with the 1992 amendments to section 437c and there is no evidence of any legislative intent to modify the initial burden of proof which is allocated to the moving party. (See *Union Bank* v. *Superior Court, supra,* 31 Cal.App.4th at pp. 584-585.) Once the proposed provisions of what would become section 437c, subdivision (n)(2) effective January 1, 1993, were introduced and while the legislation was pending in the California Senate, the first committee report prepared in connection with the new language concerning the burden of proof stated: "The most significant of the proposed changes is set forth in the new subdivision (n) to CCP Section 437c. The provision would establish the burden of proof for a plaintiff and a defendant in a summary judgment motion. It would provide that a plaintiff has met his burden of showing there is no defense to a cause of action if that party has proved each element of the cause of action entitling the party to judgment on the cause of action. Once the plaintiff has met that burden, the burden shifts to the defendant to show that a triable issue of one or more material facts exists in that cause of action. [¶] A similar rule is proposed for defendants. A defendant would be deemed to have met his burden of showing that a cause of action has no merit if the party shows that one or more elements of the cause of action cannot be established, or that there is a complete defense to that cause of action. Once the defendant meets that burden, the burden shifts to the plaintiff to show that a triable issue of fact remains in the cause of action." (See Sen. Com. on Judiciary, Rep. on Assem. Bill No. 2616

(1991-1992 Reg. Sess.) p. 8.) Based on the foregoing, we conclude the moving party has the initial burden of proof in a summary judgment motion to show that the cause of action has no merit.

It is noteworthy that the United States Supreme Court has adopted a burden-shifting analysis in interpreting rule 56 of the Federal Rules of Civil Procedure (28 U.S.C.). In *Celotex Corp.* v. *Catrett* (1986) 477 U.S. 317, 323 [91 L.Ed.2d 265, 274, 106 S.Ct. 2548], the United States Supreme Court while interpreting rule 56 of the Federal Rules of Civil Procedure (28 U.S.C.), held, "Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." (Accord, *Lujan* v. *National Wildlife Federation* (1990) 497 U.S. 871, 884-885 [111 L.Ed.2d 695, 713-714, 110 S.Ct. 3177]; *Atchison, T. & S.F. R. Co.* v. *Buell* (1987) 480 U.S. 557, 568, fn. 15 [94 L.Ed.2d 563, 574-575, 107 S.Ct. 1410].) Every circuit which has addressed the issue has held a moving party in a federal court summary judgment motion has the initial burden of proof. (*Lopez* v. *Corporación Azucarera de Puerto Rico* (1st Cir. 1991) 938 F.2d 1510, 1517; *Stepanischen* v. *Merchants Despatch Transp. Corp.* (1st Cir. 1983) 722 F.2d 922, 929; *Capital Imaging Assoc., P.C.* v. *Mohawk Valley Medical Assoc.* (2d Cir. 1993) 996 F.2d 537, 542; *National State Bank* v. *Federal Reserve Bank* (3d Cir. 1992) 979 F.2d 1579, 1582; *Custer* v. *Pan American Life Ins. Co.* (4th Cir. 1993) 12 F.3d 410, 416; *Russ* v. *International Paper Co.* (5th Cir. 1991) 943 F.2d 589, 592; *International Shortstop, Inc.* v. *Rally's, Inc.* (5th Cir. 1991) 939 F.2d 1257, 1264; *Wilson* v. *City of Zanesville* (6th Cir. 1992) 954 F.2d 349, 351; *Carver* v. *Bunch* (6th Cir. 1991) 946 F.2d 451, 454-455; *Cooper* v. *Lane* (7th Cir. 1992) 969 F.2d 368, 371; *Big O Tire Dealers, Inc.* v. *Big O Warehouse* (7th Cir. 1984) 741 F.2d 160, 163; *Cambee's Furniture* v. *Doughboy Recreational, Inc.* (8th Cir. 1987) 825 F.2d 167, 174; *Anderson* v. *Roberts* (8th Cir. 1987) 823 F.2d 235, 238; *Houghton* v. *South* (9th Cir. 1992) 965 F.2d 1532, 1536-1537; *Fitzpatrick* v. *City of Atlanta* (11th Cir. 1993) 2 F.3d 1112, 1116; *McKinney* v. *Dole* (D.C. Cir. 1985) 765 F.2d 1129, 1135 [246 App.D.C. 376].) The scope of federal law concerning summary judgment motions is pertinent to the burden of a moving party. In *Montrose Chemical Corp.* v. *Superior Court* (1993) 6 Cal.4th 287, 301, footnote 4 [24 Cal.Rptr.2d 467, 861 P.2d 1153], our Supreme Court noted that the 1993 amendments to section 437c brought California into conformity with certain aspects of federal law as it relates to a plaintiff's summary judgment motion. In *Union Bank* v. *Superior Court, supra,* 31 Cal.App.4th at page 590, we noted that the 1993 amendments to section 437c which were effective January 1, 1994,

adopted the burden-shifting characteristics of *Celotex* v. *Catrett, supra,* 477 U.S. at pages 322-327 [91 L.Ed.2d at pages 273-276] As noted previously (see fn. 6, *ante*), all the 1993 amendments did in terms of the burden of proof of a moving defendant was move the language in section 437c, subdivision (n)(2) to subdivision (o)(2). No substantive change in the language occurred in the 1992 and 1993 amendments in terms of a moving defendant's burden of proof.[7]

### C. *Defendant, in his moving papers, failed to meet his burden of showing plaintiff's causes of action had no merit*

Defendant allegedly conspired with plaintiff's disability insurer. The goal of the conspiracy was that a report favorable to the insurer would be prepared by defendant. This, according to the complaint, was done with knowledge the report would be relied on to terminate plaintiff's disability benefits. That allegation was incorporated into each of the causes of action asserted against defendant, conspiracy to violate the implied covenant and intentional infliction of severe emotional distress. As noted previously, the only possible action that can be asserted against defendant, given the allegations of the complaint, is for conspiracy to intentionally inflict severe emotional distress. ■ Defendant moved for summary judgment on the grounds plaintiff's action had no merit. As noted previously, defendant's burden on summary judgment could be met only by showing "that one or more elements of the cause of action . . . [could not] be established, or that there [was] a complete defense to that cause of action." (§ 437c, former

---

[7]The rule that the moving party is not entitled to a summary judgment unless and until it meets its burden, regardless of whether any opposing evidence is presented, is also recognized under many state statutes. (*Logan* v. *Buettner* (Ala. 1977) 342 So.2d 352, 354; *Wolner* v. *Bogaev* (1986) 290 Ark. 299 [718 S.W.2d 942, 944]; *Pioneer Finance Co.* v. *Lane* (1973) 255 Ark. 811 [502 S.W.2d 624, 626]; *Hurtt* v. *Goleburn* (Del. 1974) 330 A.2d 134, 135; *Holl* v. *Talcott* (Fla. 1966) 191 So.2d 40, 43; *Clark* v. *Gochenaur* (Fla.Dist.Ct.App. 1993) 623 So.2d 561, 562; *Farris* v. *Sneed* (1978) 144 Ga.App. 488 [241 S.E.2d 605, 607]; *Southern Protective Prod.* v. *Leasing Intern., Inc.* (1975) 134 Ga.App. 945 [216 S.E.2d 725, 727]; *McCoy* v. *Lyons* (1991) 120 Idaho 765 [820 P.2d 360, 366]; *Rogers* v. *R.J. Reynolds Tobacco Co.* (Ind.App. 1990) 557 N.E.2d 1045, 1049-1050; *Barnett* v. *Staats* (La.Ct.App. 1994) 631 So.2d 84, 87; *Chargois* v. *Trip-L-Quik* (La.Ct.App. 1983) 441 So.2d 45-47; *Brinkman & Lenon* v. *P&D Land Enterprises* (1994) 263 Mont. 238 [867 P.2d 1112, 1115]; *Minnie* v. *City of Roundup* (1993) 257 Mont. 429 [849 P.2d 212, 215]; *Weeks* v. *North Carolina NRCD* (1990) 97 N.C.App. 215 [388 S.E.2d 228, 233]; *Lowe* v. *Bradford* (1982) 305 N.C. 366 [289 S.E.2d 363, 366]; *Winkjer* v. *Herr* (N.D. 1979) 277 N.W.2d 579, 583; *Acosta* v. *Fuentes* (1992) 183 A.D.2d 483 [585 N.Y.S.2d 1016]; *Pastoriza* v. *State* (1985) 108 A.D.2d 605 [484 N.Y.S.2d 832, 834]; *Burton* v. *Ertel* (1985) 107 A.D.2d 909 [483 N.Y.S.2d 854, 855]; *Garcia* v. *Savage* (1991) 402 Pa.Super. 324 [586 A.2d 1375, 1377]; *City of Houston* v. *Clear Creek Basin Authority* (Tex. 1979) 589 S.W.2d 671, 678; *Hubert* v. *Illinois State Assistance Com'n.* (Tex.Ct.App. 1994) 867 S.W.2d 160, 162; *Young* v. *Key Pharmaceuticals, Inc.* (1989) 112 Wn.2d 216 [770 P.2d 182, 192]; *Jacobsen* v. *State* (1977) 89 Wn.2d 104 [569 P.2d 1152, 1155]; *Vassos* v. *Roussalis* (Wy. 1981) 625 P.2d 768, 773, 774 (conc. opn. of McClintock, J.).)

subd. (n)(2).) Only if defendant proved the foregoing would the burden shift to plaintiff to show a triable issue of fact existed. Section 437c, former subdivision (n)(2) explicitly states, "Once the defendant . . . has met that burden, the burden shifts to the plaintiff" to show the existence of a triable issue.

We find defendant failed to meet his burden imposed by section 437c, former subdivision (n)(2). This court has considered a defendant's evidentiary burden under the amended summary judgment statute in two recent cases. In *Jambazian* v. *Borden, supra,* 25 Cal.App.4th at page 840, a medical malpractice action, the plaintiff appealed from a summary judgment in favor of the defendant doctor. This court affirmed. The plaintiff's causes of action were for negligence and lack of informed consent with respect to the increased risk of surgery on a diabetic. The defendant physician presented qualified opinion evidence he did not breach the standard of care in the medical community in diagnosing and treating the plaintiff. (*Id.* at p. 841.) In addition, the defendant produced the declaration of an infectious disease specialist. The specialist stated he had reviewed the plaintiff's medical records and found no evidence of any diabetes. (*Id.* at pp. 842-843.) In response to the motion, the plaintiff argued he was a diabetic who had not been fully informed of the increased risks of surgery on a diabetic. The only evidence the plaintiff offered of his diabetic condition was his own declaration to that effect. (*Id.* at p. 842.) The defendant objected to the plaintiff's declaration as the opinion testimony of a layperson concerning a medical condition. (*Id.* at p. 843.) This court concluded the defendant's properly qualified opinion evidence that no diabetic condition existed met his burden as to the informed consent cause of action. Hence, defendant's showing no duty existed to explain the effect of the proposed surgery on a diabetic because his patient did not have diabetes shifted the burden in connection with the informed consent claim on summary judgment to the plaintiff. (*Id.* at p. 846.) We stated: "The declarations submitted by defendant which indicated there were no identifiable symptoms of diabetes were sufficient to require plaintiff to produce opinion evidence on the issue of whether he in fact had a diabetic condition in order to defeat the summary judgment motion. (§ 437c, former subd. (n)(2).)" (*Ibid.*) Further, we concluded since the burden had shifted, the plaintiff was required to present properly qualified opinion evidence on issue of the existence of the diabetic condition. His failure to present admissible evidence required the law and motion judge to grant the summary judgment motion.

In *Union Bank* v. *Superior Court, supra,* 31 Cal.App.4th at page 577, the defendant bank sought summary judgment on the ground it did not conspire nor defraud the plaintiffs, the only pertinent claims pending against it. In

support of its motion, the defendant produced evidence it had acted in accordance with the terms of relevant lending documents. In addition, the defendant bank relied on the plaintiffs' responses to Judicial Council form interrogatories asking them to "state all facts" upon which they based their fraud and conspiracy allegations. (*Id.* at p. 578.) The plaintiffs' only response to the form interrogatories had been that they "believed" they had been defrauded and they reserved the right under section 2030, subdivision (m), to later amend their interrogatory answers. However, the plaintiffs did not file any amended answers. This court held: "Plaintiffs' Judicial Council form interrogatory answers which contained no facts supporting the existence of misrepresentations or a fraudulent conspiracy shifted the burden of proof in connection with the summary judgment." (31 Cal.App.4th at p. 581.)

Unlike the evidence produced by the defendants in *Jambazian* and *Union Bank,* the deposition testimony relied on by defendant in the present case failed to meet his burden of proof as the moving party to show plaintiff's action had no merit. There are a myriad of litigation scenarios where, in a case like the present one, a moving party can shift the burden of proof on a conspiracy issue. For example, defendant could have filed a declaration, if such was the truth, indicating: he had no prior communications pertinent to plaintiff with the insurer other than the letter of January 8, 1992, (see fn. 4, *ante*); he never entered into any agreement with the insurer to prepare an inaccurate report; or he never agreed to prepare a report adverse to plaintiff's but favorable to the insurer's interests. This would have shifted the burden pursuant to section 437c, former subdivision (n)(2). This scenario is similar to that in our prior decision in *Jambazian v. Borden, supra,* 25 Cal.App.4th at pages 845-846, which interpreted the 1993 language in section 437c, former subdivision (n)(2). In *Jambazian,* the moving party submitted extensive declarations proving that the plaintiff did not have diabetes—the essential factual issue in connection with the informed consent cause of action. In other words, the defendant in *Jambazian* proved the informed consent cause of action had no merit because the element of the claim, that had not fully apprised the plaintiff of the hazards of the surgery, could not be established; the truth was plaintiff had no diabetic condition which would be affected by the surgical procedure. However, the present case falls outside the scope of the *Jambazian* situation. This is because the moving party's evidence failed to contain a declaration or similar evidence proving no agreement or conspiracy existed. Rather, the only evidence before the trial court was plaintiff's admission that he personally was unaware of communications between defendant and the insurer other than a letter he was shown on the day of the deposition. There was no basis for believing plaintiff would have been present during those communications. The present case is materially different from the *Jambazian* situation.

Another example of how the burden can shift is to use discovery responses such as admissions requests or interrogatory answers. As noted previously in *Union Bank* v. *Superior Court, supra*, 31 Cal.App.4th at page 581, we held that a moving defendant could shift the burden of proof pursuant to the present section 437c, subdivision (o)(2) by relying upon the plaintiffs' factually devoid answers to a Judicial Council form interrogatory which sought "all facts" which supported a conspiracy claim. By contrast, in the present case, plaintiff's admission he was unaware of other communications is materially different from the situation in *Union Bank*. When a party represented by counsel admits unawareness of communications which he or she would not have been present to observe, such, to paraphrase the words of section 437c, former subdivision (n)(2), does not prove a conspiracy cause of action has no merit and that one or more elements of the claim cannot be established.

None of the foregoing is to say that deposition responses may never shift the burden of proof in connection with a summary judgment motion. In fact, the summary judgment law explicitly recognizes deposition transcripts are admissible (§ 437c, subd. (b)) and decisional authority upholds their use to shift the burden of proof and grant such a motion. (*Preach* v. *Monter Rainbow* (1993) 12 Cal.App.4th 1441, 1451 [16 Cal.Rptr.2d 320]; *Thompson* v. *Williams* (1989) 211 Cal.App.3d 566, 573-574 [259 Cal.Rptr. 518]; *Leasman* v. *Beech Aircraft Corp.* (1975) 48 Cal.App.3d 376, 381-382 [121 Cal.Rptr. 768].) For example, in the present case, had plaintiff admitted at his deposition he was not an insured, then there would have been no merit to the breach of implied covenant claim since the existence of a contract is a legal and factual predicate of such a cause of action. (*Isaacson* v. *California Ins. Guaranty Assn.* (1988) 44 Cal.3d 775, 789 [244 Cal.Rptr. 655, 750 P.2d 297] ["implied covenant of good faith and fair dealing arises only from a contractual relationship"]; *Fireman's Fund Ins. Co.* v. *Maryland Casualty Co.* (1994) 21 Cal.App.4th 1586, 1599 [26 Cal.Rptr.2d 762] [" 'prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties' "].) However, the nature of the deposition admission in the present case did not rise to the level of such evidence which would prove the conspiracy claim had "no merit" and could not "be established." (§ 437c, former subd. (n)(2).)

D. *Plaintiff's summary judgment opposition cured the evidentiary gaps in defendant's moving papers*

As noted previously, in the opposition, plaintiff presented evidence from defendant's deposition transcript. That evidence indicated defendant

never had any contact with the insurer or the entity that arranged for the unsuccessful February 6, 1992, examination on behalf of Minnesota Mutual. Further, the first time defendant even was aware there was a dispute between plaintiff and the insurer was at the brief February 6, 1992 meeting. This was sufficient, when coupled with the evidence proffered by defendant, to shift the burden of proof to plaintiff. Defendant's deposition transcript testimony demonstrated he did not enter into any agreement to intentionally inflict severe emotional distress upon plaintiff with Minnesota Mutual. The test for a civil conspiracy was set forth by the California Supreme Court as follows: "As long as two or more persons agree to perform a wrongful act, the law places civil liability for the resulting damage on *all* of them, regardless of whether they actually commit the tort themselves. [Citation.] 'The effect of charging . . . conspiratorial conduct is to implicate all . . . who agree to the plan to commit the wrong as well as those who actually carry it out. [Citations.]' [Citation.] [¶] Therefore a plaintiff is entitled to damages from those defendants who concurred in the tortious scheme with knowledge of its unlawful purpose. [Citation.] Furthermore, the requisite concurrence and knowledge ' " 'may be inferred from the nature of the acts done, the relation of the parties, the interests of the alleged conspirators, and other circumstances.' " ' [Citation.] Tacit consent as well as express approval will suffice to hold a person liable as a coconspirator. [Citation.]" (*Wyatt* v. *Union Mortgage Co.* (1979) 24 Cal.3d 773, 784-785 [157 Cal.Rptr. 392, 598 P.2d 45], original italics; accord, *Doctors' Co.* v. *Superior Court, supra*, 49 Cal.3d at p. 44.) Plaintiff's deposition transcript indicated defendant had no knowledge of the dispute with the insurer until apprised of it by plaintiff during the brief and unsuccessful examination on February 6, 1992. Under these circumstances, to paraphrase the language of section 437c, former subdivision (n)(2), the evidence indicated plaintiff's intentional infliction of severe emotional distress claim could not be established because an essential element of that cause of action, the existence of a conspiracy of which defendant was a member, could not be established. This shifted the burden to plaintiff to show by direct or circumstantial evidence the existence of an agreement to inflict severe emotional distress on him. Plaintiff presented no evidence to disprove that defendant had no communication with Minnesota Mutual or to prove defendant was aware of the dispute between the insurer and the insured prior to the abortive examination.

We reject the argument that the trial court could not consider the deposition transcript excerpts produced by plaintiff in determining whether the burden of proof had shifted. No doubt, had plaintiff not produced the transcript of defendant's deposition, the burden would never have shifted

and the summary judgment motion should have been denied. However, in determining whether the burden of proof has shifted, the trial court, as the one in this case did, must consider all of the papers before it. Section 437c, subdivision (c) states, in pertinent part: "The motion for summary judgment shall be granted if *all* the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In determining whether the papers show that there is no triable issue as to any material fact the court shall consider *all* of the evidence set forth in the papers, except that to which objections have been made and sustained by the court, and *all* inferences reasonably deducible from the evidence . . . ." (Italics added.) The express statutory language requires that the summary judgment motion be granted if "all" the papers show the moving party is entitled to prevail. In *Weiss* v. *Chevron, U.S.A., Inc.* (1988) 204 Cal.App.3d 1094, 1096-1098 [251 Cal.Rptr. 727], the moving party offered a declaration in the reply to the opposition. After resolving the notice issues concerning the belatedly filed declaration, then Associate Justice Arabian, citing the specific language of section 437c, subdivision (c) wrote: "Moreover, subdivision (c) states that the motion 'shall be granted *if all the papers submitted* show that there is no triable issue . . . ,' and the court 'shall consider *all of the evidence set forth in the papers*' except that to which objections have been sustained. (Italics added.) This unqualified reference to 'the papers' before the court, without limitation to documents submitted with the original motion, also supports the reasonable inference that the court should consider all admissible evidence of which the opposing party has had notice and the opportunity to respond. [Citation.]" (204 Cal.App.3d at p. 1098, original italics; accord, *Plenger* v. *Alza Corp.* (1992) 11 Cal.App.4th 349, 362 [13 Cal.Rptr.2d 811].) Justice Arabian's analysis is equally applicable to the present case. There is no notice issue, the evidence which shifted the burden of proof was submitted by plaintiff himself. Therefore, the trial court correctly complied with its statutory obligation to consider all of the evidence contained in the papers, including the deposition transcript of defendant submitted by plaintiff with the opposition, in determining whether the burden of proof had shifted.[8]

---

[8]In deference to the parties, we owe a word of explanation. The present motion was filed on August 11, 1993, and ruled upon on September 8, 1993. All of this occurred before the 1992 amendments to section 437c had been the subject of any discussion by appellate courts. Further, there were uncertainties among members of the bar as to how the new summary judgment provisions in section 437c, former subdivision (n)(2) affected the burden of proof. Accordingly, before any observer of the scenario that unfolded in this case engages in second-guessing of the tactical decisions of the parties and their counsel, it bears emphasis that they were operating in a new and uncertain litigation environment given the adoption of the provisions in section 437c, former subdivision (n)(2) which is now codified in subdivision (o)(2).

E.  *None of defendant's conduct constituted the tort of infliction of severe emotional distress**

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

## IV.  DISPOSITION

The summary judgment is affirmed. Defendant, Dr. Glen McFerren, is to recover his costs on appeal from plaintiff, Robert A. Villa.

Grignon, J., and Armstrong, J., concurred.

A petition for a rehearing was denied June 20, 1995, and appellant's petition for review by the Supreme Court was denied August 31, 1995.

---

*See footnote, *ante*, page 733.