[Nos. A085999, A087341, A089575. First Dist., Div. Four. May 18, 2001.]

STEVEN M. KRANTZ, Plaintiff and Appellant, v.
BT VISUAL IMAGES, L.L.C. et al.,.Defendants and Respondents.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts 1, 2, 3, 5, and 6.

## COUNSEL

Seltzer Law Group and Margaret A. Seltzer for Plaintiff and Appellant.

Gaims, Weil, West & Epstein, Marc Epstein and Andrew M. Vogel for Defendants and Respondents.

## OPINION

**SEPULVEDA, J.**—These are three appeals from a final judgment and satellite orders entered by the San Francisco County Superior Court in a suit for damages for breach of contract, interference with prospective economic advantage, and defamation. We are asked by plaintiff-appellant to rule the sustention of a demurrer to the amended complaint without leave to amend was erroneous as a matter of law, the rulings granting defendants partial summary judgment/summary adjudication improperly shifted the burden of proof, and a series of discovery scrimmages were wrongly refereed by a court commissioner, preventing plaintiff from obtaining evidence necessary to overcome some 17 motions in limine on the eve of trial. Evaluated by the trial court under an erroneous standard, it is argued, these motions were granted, leading to a final judgment of nonsuit against plaintiff.

As will appear, plaintiff's challenges to the judgment have merit. The demurrer was erroneously sustained because the amended complaint adequately alleged conduct by defendants that was "wrongful" by a measure other than the interference itself; the motions for summary judgment/summary adjudication improperly shifted the burden of proof; and the motions in limine, evidently evaluated under the wrong standard, erroneously led to the judgment of nonsuit. We therefore reverse the judgment and remand for additional proceedings. We dismiss the appeals from the satellite orders awarding and refusing to tax certain costs and denying a motion to award attorneys' fees; the judgment on the merits having been vacated, these matters are moot.

### BACKGROUND

Because we review orders sustaining demurrers and granting summary judgment de novo, we take the facts alleged in the amended complaint as true. (*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith* (1998) 68 Cal.App.4th 445, 459-460 [80 Cal.Rptr.2d 329] [general demurrer]; *Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 579 [37 Cal.Rptr.2d 653] (*Union Bank*) [summary judgment].) Both plaintiff Steven M. Krantz and

defendants (the latter we sometimes collectively refer to as Tandberg)[1] are in the business of marketing telecommunications systems and components; defendants are headquartered in Virginia, plaintiff in San Francisco and Marin Counties. Beginning in 1993, at Tandberg's invitation, plaintiff agreed to join its "integrator/distributor" program under which Tandberg supplied video conferencing units to distributors for sale in the United States. Pursuant to that arrangement, plaintiff purchased video conferencing equipment manufactured by Tandberg for resale to customers, receiving technical support from Tandberg, who publicized plaintiff as one of its distributors.

In October 1994, plaintiff alleged, he and Tandberg entered into a partly oral, partly written contract termed a "reseller agreement," encompassing the counties of San Francisco and Marin. Under the reseller agreement, defendant appointed plaintiff a Tandberg distributor, with the right to sell its video conferencing equipment and other products. Thereafter, plaintiff established a sales account with Kaiser Permanente in Oakland, California, recommending products to that company and learning to customize video conferencing systems using modular components and a variety of hardware and software supplied by several manufacturers, rather than "off the shelf" systems. Plaintiff informed defendants of his developing relationship with Kaiser and asked for help in creating business opportunities for the sale of defendants' video conferencing products to Kaiser nationwide.

In time, the amended complaint alleged, plaintiff and one of his subcontractors succeeded in developing a custom modular video conferencing system for Kaiser's use in its own applications, using specific components that could be added or removed. The custom modular system was developed by plaintiff in anticipation of bidding for Kaiser's video conferencing business within and outside the Bay Area. In 1994, when Kaiser solicited proposals to supply 24 video conferencing systems in custom configurations for use in its Kansas City and Denver operations areas, plaintiff approached Tandberg with the suggestion they team up to bid jointly on the Kaiser proposal. According to the amended complaint, plaintiff proposed using Tandberg components for the system he had developed for Kaiser's use, with plaintiff supplying the other components. Defendants agreed to plaintiff's proposal to bid on the Kaiser project jointly. To enhance their chances of submitting the winning bid, plaintiff agreed with defendants to reduce his

---

[1]Defendants have gone through a confusing (and, plaintiff alleges, fraudulent) series of name changes during the course of this litigation. The amended complaint joined four business entities—BT Visual Images (BTVI), BT North America (BTNA), CBCI/BTVI Telecom, and Canvas Visual. It appears that at some point, BTVI was transmuted into Tandberg L.L.C., and was formerly known as Canvas VC, L.L.C.

usual distributor profit margin on the sale of defendants' components for the Kaiser bid only.

The parties also orally agreed, the amended complaint continued, that if their joint Kaiser bid was successful, plaintiff would provide the other brand name components used in the system and would assemble and install the video conferencing units for Kaiser. They further agreed plaintiff would receive an increased profit margin on all business from Kaiser resulting from the bid award and the parties would share jointly in all subsequent business with Kaiser and its affiliates. Plaintiff thereafter shared with defendants his ideas, configurations, and designs developed for the bid on the Kaiser modular video conferencing system, in order that defendants could assemble the proposal in accordance with Kaiser's bidding requirements. However, the amended complaint alleged, after defendants had obtained plaintiff's custom design for the Kaiser modular video conferencing system, they informed plaintiff that they, rather than he, would supply the brand name components and assemble and install the units for Kaiser. The amended complaint alleged that although plaintiff protested these changes, by the time defendants demanded them, it was too late to submit his own proposal to Kaiser and plaintiff was forced by the circumstances to accept defendants' "take it or leave it" proposal.

On March 14, 1995, according to the amended complaint, plaintiff signed a "teaming agreement" with defendants in order to salvage what little business he could from the Kaiser project. If he signed the agreement, defendants assured him, plaintiff would earn increased profit margins on all components manufactured by defendants on all future business resulting from work on the initial Kaiser bid, and would assemble, install, and earn profits on cabinetry and other components. The teaming agreement provided that plaintiff and defendants would prepare and submit to Kaiser a joint proposal and that, if a contract with Kaiser resulted, they would jointly participate in the negotiation and execution of the Kaiser contract. Plaintiff and defendants thereafter jointly submitted the winning bid to Kaiser.

Defendants, however, prevented plaintiff from participating in the Kaiser contract and failed to pay him the monies due thereunder. The amended complaint went on to allege 13 causes of action arising out of the Kaiser bid and aftermath, including breach of contract, of the teaming agreement, of the reseller agreement, and of the joint venture/partnership agreement. In addition, it asserted breach of a fiduciary duty running from defendants to plaintiff, breach of the implied convenant of good faith and fair dealing, deceit, interference with prospective economic advantage, unfair business practices and defamation, and sought an accounting and recovery of profits from the Kaiser venture.

Ruling on a series of pretrial motions, the trial court granted defendants' general demurrer to the ninth cause of action (interference with prospective economic advantage) without leave to amend and its motion to strike the claim for emotional distress damages from the prayer for relief. It also granted defendants' motion for summary adjudication/summary judgment with respect to claims of agency and alter ego and on the merits of the amended complaint with respect to defendant BTVI. On the eve of trial, the court granted defendants' 17 motions in limine to exclude certain of plaintiff's evidence and, on that ground, granted defendants' motion for nonsuit. This appeal from the ensuing judgment was timely perfected. We now reverse.

ANALYSIS

1.-3.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

4. *Were defendants' motions for summary judgment/summary adjudication improperly granted?*

a. *Preliminary observations.*

█ The question before us under this heading implicates a procedural controversy earnestly debated within the Court of Appeal over the past decade, without defining relief from our high court. The issue relates to legislative amendments made in 1992 and 1993 to California's summary judgment statute—Code of Civil Procedure section 437c. More precisely, the question asks what is the burden of proof lying on a party seeking summary judgment when that party does not bear the ultimate burden of proof at trial? Under the practice prevailing in the federal district courts since 1986, a defendant moving for summary judgment is not required to present *any* evidence in support of the motion. Because the plaintiff bears the ultimate burden of proof and persuasion at trial, it is enough if the moving defendant can point to the *absence* of any evidence in the record sufficient to support an element of the plaintiff's case. (See, e.g., *Celotex Corp. v. Catrett* (1986) 477 U.S. 317 [106 S.Ct. 2548, 91 L.Ed.2d 265] (*Celotex*).) While a like rule does not appear ever to have prevailed under the California summary judgment statute (see, e.g., *Barnes v. Blue Haven Pools* (1969) 1 Cal.App.3d 123, 127 [81 Cal.Rptr. 444]), within the Court of Appeal controversy has broken out as to what precise evidentiary standard the Legislature intended to adopt in the 1992-1993 amendments to Code of Civil Procedure section

*See footnote, *ante,* page 164.

437c.[5] A brief review of the leading cases will illustrate the contours of the debate.

In *Union Bank, supra,* 31 Cal.App.4th 573, Division Five of the Second District held the defendant bank was entitled to rely on the plaintiff's "factually devoid" form interrogatory answers as the evidential basis for its motion for summary judgment. (*Id.* at pp. 580-581.) This was so, the court reasoned, because after reviewing the history behind the amendments, it was clear the Legislature "intended that the burden-shifting characteristics of rule 56 of the Federal Rules of Civil Procedure . . . as interpreted in *Celotex* . . . were to be applied to California summary judgment motions when a defendant relied on a plaintiff's factually inadequate discovery answers to seek summary judgment. Now, a moving defendant may rely on factually devoid discovery responses to shift the burden of proof . . . . *Once the burden shifts as a result of the factually devoid discovery responses, the plaintiff must set forth the specific facts which prove the existence of a triable issue of material fact.* The express language of the 1992 and 1993 amendments and the judicially noticed legislative history demonstrate the foregoing was intended by the Legislature." (*Id.* at p. 590, italics added.)

In the aftermath of *Union Bank, supra,* 31 Cal.App.4th 573, a series of intermediate appellate court opinions refined the operative meaning of the "factually devoid" conception of burden-shifting on motions for summary judgment, and provoked controversy in return. In *Hunter v. Pacific Mechanical Corp.* (1995) 37 Cal.App.4th 1282 [44 Cal.Rptr.2d 335] (*Hunter*), Division Five of this court, relying on the analysis in *Union Bank,* held the moving defendant was entitled to rely on the plaintiff's "factually *vague* discovery responses" that he "lacked any significant probative evidence on the critical element of causation" for his injuries. (*Hunter,* at p. 1288, italics added.) In the wake of *Hunter,* some divisions within the Court of Appeal expressed the view that Division Five had gone too far, extending *Union Bank*'s "shift" in the *direction* of federal practice to *embrace* the *Celotex* standard itself. (See, e.g., *Certain Underwriters at Lloyd's of London v. Superior Court* (1997) 56 Cal.App.4th 952, 960 [65 Cal.Rptr.2d 821] ["In our state courts, the burden of proof on summary judgment . . . is not the same as it is at trial [citations] and we have not found any case suggesting

---

[5]In brief, the 1992 amendments added language to Code of Civil Procedure section 437c providing that a defendant has met its burden of showing a cause of action has no merit if it has shown that the plaintiff cannot establish one or more of the elements thereof (Stats. 1992, ch. 1348, § 1, p. 6706); the 1993 amendments changed the location of some material and added language to the effect that in opposing a motion for summary judgment, a plaintiff may not rely on allegations or denials in the pleadings, but must "set forth the specific facts showing that a triable issue of material fact exists as to that cause of action . . . ." (Stats. 1993, ch. 276, § 1, p. 1973.)

that the 1993 amendment . . . changes this rule. Division Five . . . did not go that far [in *Union Bank*]. . . . The Sixth District did not go that far [in *Hagen v. Hickenbottom* (1995) 41 Cal.App.4th 168 [48 Cal.Rptr.2d 197] (*Hagen*)] . . . . We will not go that far." (Italics omitted.)])

The cases appear to have been reconciled by Division Two of this court in *Scheiding v. Dinwiddie Construction Co.* (1999) 69 Cal.App.4th 64 [81 Cal.Rptr.2d 360], an opinion canvassing the debate before concluding that "[r]econciliation of the two views is not difficult once the inferential reasoning expressly permitted by [the summary judgment statute] is considered." (*Id.* at p. 83.) In *Scheiding*, the plaintiff sought compensation for asbestos-related injuries against the defendant construction company. When the defendant moved for summary judgment, contending the plaintiff's deposition responses did not mention it as being present at any of the plaintiff's worksites, the plaintiff failed to submit a declaration or other evidence in opposition. The trial court granted the defendant summary judgment.

On appeal, Division Two reversed, and held: "We agree with *Hunter*[, *supra*, 37 Cal.App.4th 1282] that the circumstantial evidence which would be required [to obtain summary judgment] can consist of 'factually devoid' discovery responses from which the absence of evidence can be inferred. And we also agree with the Sixth District's view in *Hagen*[, *supra*, 41 Cal.App.4th 168] that the burden should not shift without stringent review of the direct, circumstantial and inferential evidence." (*Scheiding v. Dinwiddie, Construction Co., supra*, 69 Cal.App.4th at p. 83, italics omitted.) Applying that standard to the record before it, the *Scheiding* court concluded the "deposition and standard interrogatories in this case did not contain questions aimed specifically at the presence or absence of [defendant] at jobsites, and neither of these discovery devices was comparable to an 'all facts' interrogatory on the subject . . . . This situation is easily distinguished from the cases on which [defendant] relies, in those cases the courts could infer from an incomplete or evasive reply that the plaintiffs had no other facts to support their case." (*Ibid.*)

Enough has been said on this knotty topic, we think, to yield an answer to plaintiff's contention that the trial court erroneously shifted the burden of proof to plaintiff in granting defendants' motions for summary judgment. That much is evident not only from defendants' reliance on *Hunter* in their summary judgment motions and in their "evidentiary" submissions in support of those motions, but also in plaintiff's failure to obtain the evidence sought in discovery and his timely request to the trial court under subdivision (h) to continue the hearing on the summary judgment motion. (Code Civ. Proc., § 437c, subd. (h).) Defendants' "showing," we will conclude, was insufficient to carry the motions under the *Union Bank* doctrine.

## b. *The order granting BTNA summary judgment on all causes of action against it.*

The issue for resolution on the summary judgment motions is a narrow one. In the amended complaint, plaintiff alleged defendant BTVI was the alter ego of the other defendant entities, was inadequately capitalized, did not keep adequate and separate business records, and did not "follow the theory or practice of corporate life." The amended complaint also alleged that in the course of contract negotiations with plaintiff, defendants had secretly replaced the name of the contracting party, misrepresenting it as a "name change," when in fact they had substituted one entity for another without plaintiff's knowledge or consent. In its motion for summary judgment, BTNA filed with the trial court declarations from three attorneys and a company executive stating that the alter ego and agency allegations of the amended complaint were untrue. Such conclusory statements, of course, are insufficient to furnish a basis for granting summary judgment; indeed, they supply the opposite—establishing the existence of a dispute regarding a material fact, i.e., whether defendants were, as a matter of fact, alter egos of each other. What they did not do, we hold, was shift the burden of proof to plaintiff.

It was in conjunction with this summary judgment motion that defendant invoked the rule purportedly endorsed by the court in *Hunter, supra,* 37 Cal.App.4th 1282, arguing that, in light of its declarations, the burden of production on the alter ego issue had shifted to plaintiff to come forward with admissible evidence showing the issue to be disputed, on pain of having summary judgment entered against him. In their motion papers, defendants asserted they "may 'simply point to the absence of evidence to support the nonmoving party's case,' " relying on *Hunter* and federal case law. There are two responses to this contention. First, we agree with the post-*Hunter* cases that *Hunter* itself does not go so far as to adopt the "finger-pointing" standard for summary judgment burden-shifting. Indeed, it can be read to reach its result by an analytic path consistent with both *Union Bank* and subsequent cases. (See, e.g., *Hagen, supra,* 41 Cal.App.4th 168; *Scheiding v. Dinwiddie Construction Co., supra,* 69 Cal.App.4th 64.)

From this premise, it follows that the moving party's "simply pointing to" the absence of evidence supporting plaintiff's position is not in itself enough to obtain summary judgment in its favor. There must be some "affirmative showing" by the moving defendant that plaintiff could not obtain such evidence, before summary judgment would be proper. (See, e.g., *Hagen, supra,* 41 Cal.App.4th at p. 186 [showing required of moving party on summary judgment "connotes something significantly more than

simply 'pointing out to the . . . court' that 'there is an absence of evidence': before the burden of producing even a prima facie case should be shifted to the plaintiff in advance of trial, a defendant . . . should be required to produce direct or circumstantial evidence that the plaintiff not only does not have but cannot reasonably expect to obtain a prima facie case"]; see also *Villa v. McFerren* (1995) 35 Cal.App.4th 733, 748 [41 Cal.Rptr.2d 719] [because "[t]here was no basis for believing plaintiff would have been present during . . . communications [between defendant and others relied on by defendant as supporting the motion]," summary judgment could not be granted].[6])

Moreover, it is clear from several of the post-*Union Bank* opinions on the effect of the 1992-1993 amendments to Code of Civil Procedure section 437c that, whatever the reach of the rule, in cases in which the opposing party (usually the plaintiff) has been thwarted in the attempt to obtain evidence that might create an issue of material fact, or discovery is incomplete, the motion for summary judgment should not be granted. (See, e.g., *Scheiding v. Dinwiddie Construction Co., supra*, 69 Cal.App.4th at p. 80 ["By thus referring to the availability of discovery, the holding of *Hunter* itself suggests that the outcome in that case might have been different if discovery had been thwarted or incomplete. It follows that the inference which has permitted courts to view 'factually devoid responses' as the evidence required to support summary judgment may be unavailable in other fact situations"].) This, we conclude, is such a case.

In his opposition to the motion for summary judgment, plaintiff cited subdivision (h) of section 437c of the Code of Civil Procedure,[7] expressly asking the trial court to deny the motion because, as the opposition put it, defendants "never designated or produced [an affiant], never designated or produced anyone who knew . . . of the relationship between these entities . . . and never produced any documents reflecting the underlying facts of [defendant's] organization, capitalization, or other facts that would

---

[6]The opinion in *Villa* was authored by Justice Paul Turner, the author of the *Union Bank* opinion.

[7]As relevant here, Code of Civil Procedure, section 437c, subdivision (h) provides: "If it appears from the affidavits submitted in opposition to a motion for summary judgment or summary adjudication . . . that facts essential to justify opposition may exist but cannot, for reasons stated, then be presented, the court shall deny the motion, or order a continuance to permit affidavits to be obtained or discovery to be had . . . ."

be probative on the [alter ego] issue[] . . . . the court should deny the motion because the discovery sought on the foundational facts for these issues has not been provided."

As we have noted in an unpublished portion of this opinion, one of the discovery rulings challenged by plaintiff on appeal concerns his attempt to obtain documents in defendants' possession bearing on the alter ego issue. For reasons we have determined need not be resolved here, plaintiff's efforts to obtain these materials were unsuccessful. But, as in the *Scheiding, Villa,* and *Hagen* cases, so here, without such discovery, we think it unreasonable to expect plaintiff to rebut the declarations filed in support of defendants' motion for summary judgment on the question of agency and alter ego. These issues, of course, are not ones that plaintiff would be expected to have any knowledge of. Or, to paraphrase the *Hagen* court, "Any arguable inability . . . plaintiff[] might have experienced . . . to provide direct evidence of [alter ego or agency] would have been explicable, here as in *Villa,* inasmuch as plaintiff[] almost certainly would not have [had access to relevant documentary evidence]." (*Hagen, supra,* 41 Cal.App.4th at p. 187.)

 c. *The order granting BTVI summary adjudication on all causes of action against it.*

■ A comparable analysis applies to the order granting defendant BTVI's motion for summary adjudication of all causes of actions alleged against it in the amended complaint. That order, drawn by counsel for the moving party and signed by the trial court, recites the basis for its ruling with respect to each of the claims pleaded. We conclude, however, that given the state of the record before the trial court and the restrictions on granting summary judgment imposed by the governing statute, the asserted grounds are insufficient to sustain the motion as a matter of law. With respect to the first cause of action—breach of contract—the trial court ruled the promises exchanged by the parties were "too indefinite" to be enforced. At that juncture in the development of the litigation, it was error to make such a ruling. It is clear from case law on the issue of indefiniteness and contractual enforceability that courts have a pronounced preference for enforcing agreements, if that is reasonably possible. (See, e.g., *Ersa Grae Corp. v. Fluor Corp.* (1991) 1 Cal.App.4th 613, 623 [2 Cal.Rptr.2d 288] ["Under California law, a contract will be enforced if it is sufficiently definite . . . to ascertain the parties' obligations and to determine whether those obligations have been performed or breached. [Citations.] Stated otherwise, the contract will be enforced if it is possible to reach a fair and just result even if, in the process, the court is required to fill in some gaps"]; *Okun v. Morton*

(1988) 203 Cal.App.3d 805, 817 [250 Cal.Rptr. 220] ["the modern trend of the law favors carrying out the parties' intentions through the enforcement of contracts and disfavors holding them unenforceable because of uncertainty"].)

We think it is clear from both the text of the agreement and the context of its execution and performance, as alleged in the amended complaint, that the essential contract terms were not so indefinite as to preclude enforcement. In effect, defendants argued the provision of the agreement that the parties would negotiate margins and product pricing in the event their joint Kaiser bid was successful, rendered the contract an "agreement to agree," and made it too indefinite to enforce. While we might agree the unstated future margins and price terms are indefinite, they were necessarily so: it remained to be seen whether the joint proposal would be accepted. Moreover, they are not essential elements of the agreement to jointly prepare and submit a bid on the Kaiser request for proposals, dependent as they were on the scope of Kaiser's purchases, if any.

The trial court granted summary judgment as to the second cause of action, the claim plaintiff signed the contract under duress, on the ground that plaintiff "had reasonable alternatives at the time he signed the Teaming Agreement and was not facing any financial jeopardy . . . [and] that his attorney was reviewing it." We do not, however, consider these statements sufficient in themselves to negate the duress claim *as a matter of law*. (See, e.g., *CrossTalk Productions, Inc. v. Jacobson* (1998) 65 Cal.App.4th 631, 644 [76 Cal.Rptr.2d 615] ["The doctrine of 'economic duress' can apply when one party has done a wrongful act which is sufficiently coercive to cause a reasonably prudent person, faced with no reasonable alternative, to agree to an unfavorable contract"]; *Philippine Export & Foreign Loan Guarantee Corp. v. Chuidian* (1990) 218 Cal.App.3d 1058, 1077-1078 [267 Cal.Rptr. 457] ["The Restatement of Contracts defines [duress] broadly under the heading of economic compulsion. Impermissible threats include bad faith threatened use of civil process; threats which are a breach of the duty of good faith and fair dealing under a contract . . . ; threats which would harm the recipient without significantly benefiting the party making the threat; or threats where 'what is threatened is otherwise a use of power for illegitimate ends.' [Citation.] [¶] . . . [¶] The question of duress . . . is a factual question; the existence of duress always depends upon the circumstances"].)

Summary judgment was granted defendants on plaintiff's third cause of action, the alleged breach of the teaming agreement, on the ground defendants did not breach the agreement, paid plaintiff everything due him under it, and that plaintiff suffered no damages as a result of the alleged breach.

Again, placed alongside the allegations of the amended complaint, rather than supporting an award of summary judgment, these conclusions do no more than confirm the existence of material factual disputes.

 The fourth and fifth causes of action pleaded breach of the reseller and joint venture/partnership agreements between plaintiff and defendants. Summary judgment was granted as to these claims on the ground there was no partnership or joint venture because both the reseller and teaming agreements provide that the parties are independent contractors and not partners. Moreover, the order continues, the parties did not share profits and losses and the promises, including that of greater margins on future sales, are too indefinite to enforce and could not have been relied upon. Again, we think this account does little more than present the contending factual claims by the parties, rather than a resolution of those claims through an award of summary judgment.

At oral argument, counsel for respondent relied on the opinion in *Connor v. Great Western Sav. & Loan Assn.* (1968), 69 Cal.2d 850 [73 Cal.Rptr. 369, 447 P.2d 609, 39 A.L.R.3d 224], in support of the contention there was no joint venture between the parties (as alleged in the complaint) because there was no agreement to share in the profits and losses of the enterprise. Here is what Justice Traynor said on that issue in *Connor*: "A joint venture exists when there is 'an agreement between the parties under which they have a community of interest . . . in a common business undertaking, an understanding as to the sharing of profits and losses, and a right of joint control.' [Citations.] . . . . Although the profits of [the parties to the appeal] were dependent on the overall success of the development, neither was to share in the profits or the losses that the other might realize or suffer . . . . Under these circumstances, no joint venture existed. [Citations.]" (*Id.* at p. 863.)

Collecting and discussing the cases, Witkin has this to say regarding the necessity for a sharing of profits and losses: "It has been declared that the sharing of profits and losses in a common enterprise is an indispensable feature of joint venture, and that in its absence, no finding of joint liability can be made. [Citations.] [¶] . . . [¶] However, this strict approach has not always been followed, and any similar cooperative contractual arrangements may be loosely termed joint ventures, or akin thereto. In *Universal Sales Corp. v. California Press Mfg. Co.* (1942) 20 C.2d 751, 128 P.2d 665, plaintiff distributor . . . and defendant manufacturer . . . entered into an agreement that defendant would develop a new press and plaintiff would demonstrate and attempt to negotiate sales for a percentage. *Held,* this was a contractual relationship 'akin to that of joint adventurers.' While in a technical joint venture there is usually a sharing of profits and losses in

prosecution of the common enterprise, the mode of participation in the fruits of the undertaking may be left to the agreement of parties; and whether they create the strict relation of joint adventurers or some other relation involving cooperative effort depends on their actual intention. (20 C.2d 764.)" (9 Witkin, Summary of Cal. Law (9th ed. 1989) Partnership, § 18, pp. 417-418; see also *April Enterprises, Inc. v. KTTV* (1983) 147 Cal.App.3d 805, 819-820 [195 Cal.Rptr. 421].) We do not conclude a joint venture existed, only that at this stage of the litigation, that is a question in dispute, barring summary disposition of the claim.

Summary judgment on the sixth cause of action, alleging breach of a fiduciary duty owed plaintiff, was granted on the ground that there was no partnership or joint venture and thus no fiduciary duty to be breached. But this conclusion begs the question "What was the nature of the relationship created by the teaming agreement?" While defendants insisted the parties remained independent contractors, plaintiff rejoined that the written provisions were contradictory and fairly supplemented by parole evidence to explain the parties' intent. This obviously raised an issue of material fact precluding summary adjudication.

The last three causes of action extinguished by the order granting defendants summary judgment are all incidental to and depend upon the validity (or invalidity) of the preceding claims for relief. That is, these claims—for breach of the convenant of good faith and fair dealing, for an accounting of profits, and for relief under the unfair competition law (Bus. & Prof. Code, § 17200 et seq.)—stand or fall depending on the fate of the antecedent substantive causes of action. Since, as we have concluded, summary judgment for defendants was granted improvidently by the trial court, it was error to grant the same relief with respect to these three causes of action as well.

5., 6.*

. . . . . . . . . . . . . . . . . . . . . . . .

CONCLUSION

The judgment on the merits appealed from in case No. A085999 is reversed and the cause is remanded to the trial court for additional

---

*See footnote, *ante,* page 164.

proceedings consistent with this opinion; the appeals in case Nos. A087341 and A089575 are dismissed as moot.

Reardon, Acting P. J., and Chiantelli, J.,* concurred.

A petition for a rehearing was denied June 18, 2001, and on May 22, 2001, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied August 29, 2001.

---

*Judge of the San Francisco Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.