Filed 1/23/26  Woods v. Lake Creek Industrial CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

|  |  |
|---|---|
| BARRETT WOODS et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> LAKE CREEK INDUSTRIAL, LLC et al., <br><br> Defendants and Respondents. | B333643 <br><br> (Los Angeles County Super. Ct. No. 22STCV23792) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard L. Fruin, Jr., Judge.  Affirmed.

Fennemore, Graham A. Van Leuven and Daniel C. Stein for Plaintiffs and Appellants.

Brownstein Hyatt Faber Schreck, Jonathan C. Sandler, Eric D. Walther and William D. Nobriga for Defendants and Respondents.

# INTRODUCTION

This is a dispute over commercial real estate. Appellants Barret Woods and Bravo Whiskey Properties LLC (Bravo Whiskey) leased commercial property to Four-Season Travel, LLC ("Four-Season"). The lease contained a non-assignable option to buy the property at a set price. Four-Season later purchased the property for the price given in the option, and immediately sold it to respondent Downey Industrial, LLC (Downey Industrial). Woods and Bravo Whiskey alleged this purchase and immediate resale was a sham, designed to avoid the non-assignment clause in their lease and sale contracts with Four-Season, and sued Downey Industrial and several of its affiliates, respondents Lake Creek Industrial, LLC (Lake Creek), LCI Downey, LLC (LCI), Amstar-LCI 2, LLC (Amstar), and Michael Johnson.[1]

The Johnson parties moved for summary judgment arguing they had not engaged in any wrongful conduct. The trial court agreed, granted their motions, and entered judgment in their favor. Woods and Bravo Whiskey now appeal, arguing the trial court erred, or in the alternative, should have granted a continuance so more discovery could be done. We affirm.

# FACTS AND PROCEDURAL BACKGROUND

Prior to the transactions at issue here, Woods owned commercial property at 12122-12130 Woodruff Avenue in Downey. In April 2020, Woods leased the property to Four-Season for a five-year term of occupancy to begin on January 1, 2021. Simultaneously, Woods and Four-Season executed an amendment to the lease, giving Four-Season the option to purchase the property for $6,850,000 during the first two years of occupancy. The

---

[1] Collectively with Downey Industrial, these parties are hereafter referred to as "the Johnson parties."

amendment expressly barred Four-Season from assigning this option, and stipulated that the option could not be exercised if Four-Season was in default on their other obligations under the lease. After the lease term began, Woods transferred the property to Bravo Whiskey, an entity Woods controlled.

## I.  *The Option and Sale*

In February 2021, Mark Repstad, a real estate agent acting on behalf of Four-Season, contacted Johnson, the principal of Lake Creek, about a deal in which Four-Season would assign Lake Creek its option to purchase the property in exchange for a fee in the range of $100,000 to $200,000. Four-Season would then terminate its lease, allowing Lake Creek to charge higher rent to a new tenant.

Four-Season and Lake Creek subsequently reached an agreement that called for Four-Season to exercise its option to purchase the property, open escrow using deposit money provided by Lake Creek, then assign Lake Creek its rights to complete the purchase. In exchange, Four-Season would receive $160,000.

In March 2021, Four-Season notified Woods of its intent to exercise the option. Woods disputed Four-Season's right to exercise the option, claiming Four-Season was then in default under the lease. Nevertheless, Woods continued negotiating with Four-Season. Four-Season sent Woods a draft purchase agreement copied from an exhibit to the lease. Woods removed language that would allow Four-Season to assign its rights to complete the purchase. Woods insisted he would not sign any agreement allowing anyone other than Four-Season to complete the purchase.

In June 2021, Four-Season sued Woods and Bravo Whiskey for specific performance on the option and breach of contract. Less than three weeks later, Four-Season and Woods (on behalf of Bravo Whiskey) executed a purchase agreement for the property. The agreement did not include an assignability clause, and Four-Season represented to Woods that it would not assign the purchase agreement.[2]

Four-Season and Lake Creek restructured their deal to account for the position taken by Woods in his negotiations with Four-Season. In July 2021, Four-Season and Lake Creek reached a new agreement. The new agreement called for Lake Creek to buy the property from Four-Season immediately after Four-Season finished buying it from Bravo Whiskey. Lake Creek would lend Four-Season the $6,850,000 it needed to buy the property from Bravo Whiskey. That loan would only bear interest if Four-Season subsequently decided not to sell the property to Lake Creek; if the sale to Lake Creek went through, the loan would be forgiven as part of the purchase price. Lake Creek would pay Four-Season a total of $7,460,000 for the property.

On September 27, 2021, Bravo Whiskey transferred the property to Four-Season. On October 22, 2021, Lake Creek assigned its right to purchase the property from Four-Season to a subsidiary, Downey Industrial. On October 27, 2021, Four-Season transferred the property to Downey Industrial.

---

[2]    Execution of the purchase agreement did not result in dismissal of Four-Season's complaint. That case went to trial, where Woods and Bravo Whiskey prevailed. No appeal was taken.

4

II.     *This Action*

A.      *Pleadings*

On July 22, 2022, Woods and Bravo Whiskey sued Four-Season, Repstad, Southland CRE, Inc., Southland Commercial Real Estate, Inc., and Lake Creek, asserting causes of action for breach of contract, intentional misrepresentation, fraud by concealment, negligent misrepresentation, intentional interference with economic relations, negligent interference with economic relations, unjust enrichment, and civil conspiracy. Woods and Bravo Whiskey subsequently added Realty Advisory Group, Inc., LCI, Amstar, Downey Industrial, and Johnson as defendants.

On March 20, 2023, Woods and Bravo Whiskey filed the operative second amended complaint, alleging the same causes of action. Only the claims for negligent and intentional interference with economic relations, unjust enrichment, and civil conspiracy were asserted against the Johnson parties.

B.      *Summary Judgment*

On July 5, 2023, the Johnson parties moved for summary judgment,[3] arguing Woods and Bravo Whiskey could not prove the Johnson parties interfered with their economic relationships, caused any breach of contract, or committed any independently wrongful act. They also argued Woods and Bravo Whiskey had no damages. The motions were scheduled for hearing on September 18, 2023.

---

[3]     The Johnson parties were separately represented below and filed two motions. Johnson, Lake Creek, and LCI filed one motion, while Amstar and Downey Industrial filed the other. The motions made identical arguments, and the Johnson parties now share representation on appeal.

On August 23, 2023, Woods and Bravo Whiskey brought an ex parte application to continue the summary judgment hearings pursuant to Code of Civil Procedure section 437c, subdivision (h).[4] Woods and Bravo Whiskey argued the Johnson parties improperly withheld discovery. The trial court denied the application.

In their opposition to the motions for summary judgment, Woods and Bravo Whiskey argued Downey Industrial's purchase of the property from Four-Season was a "sham," designed solely to evade the contractual provisions preventing Four-Season from assigning its right to purchase the property from Woods and Bravo Whiskey. Woods and Bravo Whiskey claimed this "sham" transaction was independently wrongful because it enabled Four-Season to breach its contract with Woods and Bravo Whiskey, and it caused damages because (1) it prevented Woods and Bravo Whiskey from selling the property at market rate, and (2) it prevented Woods and Bravo Whiskey from keeping the property and collecting rent. Woods and Bravo Whiskey also raised the alleged withholding of discovery once more.

On September 18, 2023, the court continued the hearing for supplemental briefing to discuss documents that were produced late. In their supplemental briefing, Woods and Bravo Whiskey contended the additional documents reinforced their argument that the contract between Four-Season and the Johnson parties was a sham. In their supplemental briefing, the Johnson parties argued the documents were neither new nor significant, pointing out that some of them had been produced months earlier by another defendant.

---

[4]	All future statutory references are to the Code of Civil Procedure, unless otherwise stated.

On September 26, 2023, the trial court granted the motions for summary judgment. The court reasoned that Woods and Bravo Whiskey could not succeed on the interference torts because the Johnson parties had not engaged in any wrongful act and there was no breach of Four-Season's contracts with Woods and Bravo Whiskey. The court further reasoned that the lack of any wrongful act prevented success on the claims for unjust enrichment and civil conspiracy.

The court entered judgment in favor of the Johnson parties. Woods and Bravo Whiskey timely appealed.

## DISCUSSION

In their initial briefing, Woods and Bravo Whiskey argue the Johnson parties were not entitled to summary judgment because there were triable issues of fact as to whether Four-Season assigned its contractual rights to Lake Creek. Woods and Bravo Whiskey also argue the Johnson parties brought their motions prematurely, before discovery could be completed, and the trial court should have granted the request to continue the hearing under section 437c, subdivision (h). We are not persuaded.

I. *Standard of Review*

We review the trial court's ruling on the motions for summary judgment de novo. (*Olson v. La Jolla Neurological Associates* (2022) 85 Cal.App.5th 723, 733.) We review the denial of a continuance under section 437c, subdivision (h) for abuse of discretion. (*Braganza v. Albertson's, LLC* (2021) 67 Cal.App.5th 144, 152 (*Braganza*).)

7

II.     *Summary Judgment*

The causes of action at issue here are intentional interference with prospective economic advantage, negligent interference with prospective economic advantage, unjust enrichment, and civil conspiracy.[5]  The elements of a claim for intentional interference with prospective economic advantage are (1) an existing economic relationship between the plaintiff and a third party with a probability of future benefit to the plaintiff, (2) defendant's knowledge of that relationship, (3) defendant's intentional (4) interference with that relationship (5) by independently wrongful means, (6) causing damages.  (*Drink Tank Ventures LLC v. Real Soda in Real Bottles, Ltd.* (2021) 71 Cal.App.5th 528, 537 (*Drink Tank*).)  The elements of a claim for negligent interference are the same, except that the intent requirement is lowered; the plaintiff need only prove the defendant knew plaintiff's relationship would be disrupted and failed to act with reasonable care.  (*Nelson v. Tucker Ellis, LLP* (2020) 48 Cal.App.5th 827, 844, fn. 5.)

To proceed on either of the interference torts, the plaintiff must show that the interfering act was independently wrongful.  (*Ixchel Pharma, LLC v. Biogen, Inc.* (2020) 9 Cal.5th 1130, 1146.)  The act must be wrongful by some measure beyond the fact of the interference itself, and must be something other than a breach of contract.  (*Drink Tank, supra,* 71 Cal.App.5th at p. 537, 539–540.)  This was the element the trial court said was missing in Woods and Bravo Whiskey's case.

In their initial briefing on appeal, the parties focused entirely on whether Four-Season's sale of the property to Downey Industrial breached

---

[5]     Aside from a brief mention of unjust enrichment and conspiracy in the opening brief, the parties provide no separate discussion of these claims. They treat these claims as derivative of the interference torts.  Therefore, so do we.

Four-Season's contract with Woods and Bravo Whiskey. However, because a breach of contract may not give rise to tort liability under *Drink Tank*, we asked the parties for supplemental letter briefs discussing whether Woods and Bravo Whiskey supplied evidence of an independently wrongful act other than a breach of contract. We now conclude they did not.

In their supplemental briefing, Woods and Bravo Whiskey pointed to three sources of an independently wrongful act: (1) their claim that Lake Creek's loan to Four-Season was a "sham" to evade Four-Season's contract, (2) the allegations of fraud pled against other parties, and (3) the fact that a claim for interference with contract does not require an independently wrongful act. (*Drink Tank, supra,* 71 Cal.App.5th at p. 539.) None of these is sufficient.

First, each theory simply returns to the alleged breach of contract. The argument that Lake Creek's loan to Four-Season was a "sham" to evade Four-Season's contract cites no authority which makes the loan wrongful, other than the alleged resulting breach of contract. The fraud argument relies on allegations that the Johnson parties negotiated with Four-Season to buy the property, which would only be rendered wrongful by the alleged breach of contract. And the interference with contract argument runs in a circle: the alleged wrongful act is that the Johnson parties enabled Four-Season to breach its contract.

Second, no other tort theories were pled or asserted against the Johnson parties. None of the evidence cited by Woods and Bravo Whiskey suggests the Johnson parties made any affirmative misrepresentation to Woods or Bravo Whiskey, or that any of the Johnson parties had a duty to Woods or Bravo Whiskey that would make their silence wrongful. (See *Rattagan v. Uber Technologies, Inc.* (2024) 17 Cal.5th 1, 40.) Nor did Woods

9

and Bravo Whiskey plead a claim for interference with contract.[6]  At summary judgment, a party is limited to the theories it has pled.  (*Falcon v. Long Beach Genetics, Inc.* (2014) 224 Cal.App.4th 1263, 1280.)

Woods and Bravo Whiskey rely on *Buxbom v. Smith* (1944) 23 Cal.2d 535 for the proposition that appropriating someone else's contract right is an independently wrongful act.  It is not clear how that would apply here, nor is *Buxbom* itself on point.  In that case, the plaintiff was a newspaper publisher; defendants entered a contract that caused plaintiff to hire more staff, then quickly canceled it.  (*Id.* at pp. 538–539.)  Defendants then exploited the disruption in plaintiff's business to hire plaintiff's staff away and take over his market.  (*Id.* at pp. 544–548.)  That is not what happened here.  There is no claim that the Johnson parties ever had a contract with Woods or Bravo Whiskey, or that any going business was destroyed.

At the hearing on the motions for summary judgment, the trial court asked Woods and Bravo Whiskey if there was anything wrongful about Four-Season's decision to re-sell the property to the Johnson parties.  The answer was "No."  The only thing Woods and Bravo Whiskey pointed to was their own contract with Four-Season.  That is not sufficient to support the interference torts Woods and Bravo Whiskey pled.  (*Drink Tank, supra,* 71 Cal.App.5th at pp. 539–540.)

Finally, Woods and Bravo Whiskey argue that *Krantz v. BT Visual Images, LLC* (2001) 89 Cal.App.4th 164 (*Krantz*) governs here.  It does not. *Krantz* discusses a different kind of case: where the defendant attempts to meet its burden on summary judgment by submitting only conclusory

---

[6]     Woods and Bravo Whiskey did seek leave from the trial court to add such a claim to their complaint.  That request was not granted, and they do not challenge that outcome on appeal.  In their supplemental reply, Woods and Bravo Whiskey tacitly abandon the interference with contract theory.

declarations to the effect that the plaintiff's allegations are false. (*Id.* at p. 173.) In that scenario, *Krantz* holds, a defendant cannot shoulder its burden on summary judgment by simply pointing at plaintiff and asserting a lack of evidence. (*Id.* at pp. 173–174.) That is not what happened here. The Johnson parties described the transactions at issue and raised legal challenges to the claims against them. For the reasons given, those challenges were properly successful.

III.  *Request for Continuance*

Section 437c, subdivision (h) provides "[i]f it appears from the affidavits submitted in opposition to a motion for summary judgment . . . that facts essential to justify opposition may exist but cannot, for reasons stated, be presented, the court shall deny the motion, order a continuance to permit affidavits to be obtained or discovery to be had, or make any other order as may be just. The application to continue the motion to obtain necessary discovery may also be made by ex parte motion at any time on or before the date the opposition response to the motion is due." A request under section 437c, subdivision (h) must show (1) the facts to be obtained are essential to opposing the motion, (2) reason to believe these facts exist, and (3) reasonable diligence in attempting to discover these facts. (*Braganza, supra,* 67 Cal.App.5th at p. 152.)

Here, Woods and Bravo Whiskey made two requests to continue the motions for summary judgment: one by way of an ex parte application filed a month before the scheduled hearing date, and another in their opposition papers. The court denied the first, and granted an eight-day continuance in response to the second, which plaintiff agreed was sufficient time. We

11

conclude the court did not abuse its discretion, because Woods and Bravo Whiskey did not identify facts essential to opposing the motions.[7]

### A.  *Ex Parte Application*

In their ex parte application, Woods and Bravo Whiskey complained generally that documents had not been produced.  But they did not explain what they expected those documents to show.  Woods and Bravo Whiskey suggested the documents would give them insight into how Four-Season negotiated with the Johnson parties.  The purpose of that was to prove the existence of "a conspiracy to breach the non-assignment provision" contained in the contract between Four-Season and Woods and Bravo Whiskey.

That is not sufficient to establish the existence of facts essential to oppose the motions.  In the first place, there can be no conspiracy to breach a contract because the object of a civil conspiracy must be a tort.  (*Hoang v. Tran* (2021) 60 Cal.App.5th 513, 539.)  In the second place, there is no indication that the negotiations between the Johnson parties and Four-Season would have disclosed an independently wrongful act other than the alleged breach of contract already discussed.

Woods and Bravo Whiskey argue the trial court did not "provide [a] good reason" for its ruling and did not consider all the relevant factors.  However, they cite no authority which requires the trial court to state its reasoning when denying an ex parte application.  Nor do they cite any evidence in the record that shows the court failed to consider the factors they identify.  The decisions of the trial court are presumed correct.  (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)  As a corollary, we presume the

---

[7]  For this reason, we do not discuss the parties' arguments regarding diligence or gamesmanship.

trial court applied the correct legal standard absent evidence to the contrary. (*Cueto v. Dozier* (2015) 241 Cal.App.4th 550, 561.)

B.    *The Opposition*

The only difference between the request made in the ex parte application and the request made in the opposition papers was that the opposition papers also raised the issue of 8,000 pages of documents Woods and Bravo Whiskey received shortly before the opposition was due.  Woods and Bravo Whiskey asked the court for additional time to review those documents.

However, as Woods and Bravo Whiskey concede, this request was granted.  At oral argument, the trial court asked counsel how much time he needed to prepare supplemental briefs to incorporate the late-received documents.  Counsel for Woods and Bravo Whiskey indicated he could do so in two days.  The hearing was continued eight days, Woods and Bravo Whiskey filed their supplemental briefs, and the motions were re-argued. Woods and Bravo Whiskey now contend they should have been given time to depose witnesses regarding those documents.  But they do not explain what additional information that would yield.

IV.    *Conclusion*

To prevail on their claims for interference with prospective economic relations, Woods and Bravo Whiskey were required to prove the Johnson parties engaged in an independently wrongful act, other than a breach of contract.  (*Drink Tank, supra,* 71 Cal.App.5th at pp. 537, 539–540.)  The trial court found there was no breach of contract, but as we have explained, even if it had found a breach, Woods and Bravo Whiskey failed to show wrongful

13

conduct that would justify a recovery in tort. Nor did they show that a continuance for additional discovery would have produced facts that would enable them to do so. The Johnson parties purchased the property from its owner, Four-Season. Woods and Bravo Whiskey have failed to establish that this purchase should render the Johnson parties liable in tort to third persons. Therefore, we affirm the orders of the trial court.

## DISPOSITION

The judgment of the trial court is affirmed. Respondents shall recover their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ZUKIN, P. J.

WE CONCUR:


MORI, J.


TAMZARIAN, J.


14