Filed 8/30/24  Malibu Township Council v. City Council of the City of Malibu CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| MALIBU TOWNSHIP COUNCIL, INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> CITY COUNCIL OF THE CITY OF MALIBU et al., <br><br> Defendants and Respondents. | B321688 <br><br> (Los Angeles County Super. Ct. No. BS142420) |

APPEAL from a judgment of the Superior Court of Los Angeles County, James C. Chalfant and Holly J. Fujie, Judges. Affirmed.

Angel Law, Frank P. Angel, and Cooper Kass for Plaintiff and Appellant.

Best Best & Krieger, Scott W. Ditfurth, and Gregg W. Kettles for Defendants and Respondents.

This is the second appeal that arises from long-pending litigation. What remains for our resolution at this point are two causes of action for declaratory relief based on asserted violations of the Ralph M. Brown Act (Brown Act) (Gov. Code § 54950 et seq.) occurring in December 2012. In those claims, plaintiff and appellant Malibu Township Council, Inc. (MTC) alleges the City Council of the City of Malibu (the City Council) violated the Brown Act by adding an item to its closed session agenda—a proposed settlement of an attorney fee dispute in pending litigation—in contravention of procedural requirements and without sufficient reason for avoiding discussion of the item in open session. We consider whether the trial court erred in finding, via a combination of summary adjudication and a bench trial, that MTC had not proven the City Council violated the Brown Act.

## I. BACKGROUND

### A. The "Override" Lawsuit

In 2009, the City of Malibu (the City) sued the California Coastal Commission (the Coastal Commission) and the Santa Monica Mountains Conservancy and the Mountains Recreation and Conservation Authority (collectively, the Conservancy). The factual background of that matter, which is complex, is described in detail in *City of Malibu v. California Coastal Com.* (2012) 206 Cal.App.4th 549 (the "Override Lawsuit"). For our purposes, it suffices to summarize the dispute as follows: the City filed a petition for writ of mandate after the Conservancy proposed amendments to the City's local coastal plan, the Conservancy "asked the Coastal Commission to declare, in effect, that the override procedures contained in the Coastal Commission's

2

regulations authorized the Conservancy to ask the Coastal Commission to certify the Conservancy's proposed amendments to Malibu's [local coastal plan] over the objections of the city," and the Coastal Commission agreed that the override provisions applied. (*Id.* at 557-558, 560.) The trial court disagreed with the Coastal Commission, concluded the override procedure did not apply, and granted the requested writ of mandate—a result the Court of Appeal affirmed in May 2012. (*Id.* at 560, 564.)

B. *The Operative Petition and First Appeal in This Litigation*

MTC initiated this litigation against the City and the City Council (we will use "the City" to refer to both and distinguish between the two only where necessary for clarity) in April 2013. A second amended petition and complaint (the operative petition) was filed a few months later. The substance of MTC's operative petition mainly challenges a land swap proposal whereby the City would trade city-owned Charmlee Wilderness Park to the Santa Monica Mountains Conservancy for the Malibu Bluffs Park. Because none of the causes of action pertaining to the swap are at issue in this appeal, we do not discuss the facts pertaining to those claims further.[1]

In addition, the operative petition also alleges improprieties related to a December 10, 2012, meeting of the City Council where the Override Lawsuit was discussed. The petition

---

[1] The facts underlying those claims were discussed in the prior appeal in this matter, *Malibu Township Council, Inc. v. City Council of the City of Malibu* (Oct. 10, 2017, B266893) [nonpub. opn.].

3

alleges the City Council violated the Brown Act, among other laws, by discussing an issue in the closed session portion of that meeting that was not identified or described by either the City Council's original or amended agendas for the meeting.[2] According to the petition, the undisclosed issue was the approval of a final attorney fee settlement in the Override Lawsuit. The petition also alleges the City Council lacked grounds to discuss the matter in closed session because open session discussion and approval of the settlement would not have prejudiced the City's position in the litigation.

The City filed a motion for judgment on the pleadings as to MTC's Brown Act claims, which the trial court granted as to the injunctive and declaratory relief causes of action but denied as to the cause of action seeking a writ of mandate. The City then filed a motion to dismiss the cause of action for a writ of mandate that was predicated on the alleged Brown Act violation. The court held a hearing, granted the motion, and entered judgment. MTC appealed the trial court's rulings on its Brown Act claims.

In *Malibu Township Council, Inc. v. City Council of the City of Malibu* (Oct. 10, 2017, B266893) [nonpub. opn.], a prior panel of this court largely affirmed the trial court's rulings, but reversed the trial court's order on the motion for judgment on the pleadings and remanded "as to plaintiff's cause of action under [the Brown Act] for declaratory and injunctive relief pertaining to" MTC's allegations that the City "failed to properly notice or report the closed session" on December 10, 2012, and its

---

[2]     Undesignated statutory references that follow are to the Government Code.

4

allegations as to whether the Override Lawsuit "was properly a closed session subject matter."

## C. *The City Moves for Summary Judgment*

Following remand, the City moved for summary judgment or, in the alternative, summary adjudication. The motion identified three issues on which the City sought summary adjudication: MTC's cause of action under section 54960 (for declaratory and injunctive relief), its injunctive relief cause of action, and its declaratory relief cause of action. As to all three issues, the City asserted it properly noticed the closed session discussion of the Override Lawsuit, the matter discussed was properly a closed session subject matter, and the City was not required to report the measures taken in closed session. In support of its summary judgment motion, the City asked the court to take judicial notice of the prior appellate opinion in this matter, the City Council's December 10, 2012, meeting minutes, court documents related to the payment of attorney fees in the Override Lawsuit, the Coastal Commission's December 2012 meeting agenda, and other materials. The City did not submit any declarations in support of its motion.

### 1. *The City's proffered undisputed material facts*

On Monday, December 10, 2012, the Malibu City Council convened its regular meeting at 6:00 p.m.[3] City Attorney Christi Hogin (Hogin) informed the City Council that, after the meeting

---

[3]    MTC disputed the statements regarding this portion of the meeting to the extent they implied the City Council convened in open session at 6:00 p.m.

5

agenda had been posted, she received an offer of settlement in the Override Lawsuit, which was then pending in Los Angeles Superior Court. She also advised the City Council that it needed to take action before the Coastal Commission's closed session meeting on Wednesday, December 12. On those factual bases, the City Council added the matter to the closed session agenda.[4] After the closed session, the City Attorney stated publicly in open session that the Override Lawsuit had been added to the closed session agenda, the City Council had discussed the offer of settlement, and the City Council had taken no reportable action.

The City's deadline to file a motion for attorney fees in the Override Lawsuit had been extended by stipulation to December 21, 2012. A posted agenda for the Coastal Commission confirms it was to meet on December 12, 2012. The Coastal Commission's agenda for the meeting identified the Override Lawsuit in a list of pending litigation items to be discussed in closed session.

A document entitled "Stipulation Regarding Payment of City of Malibu's Attorneys' Fees and Costs; Order" was filed in the Override Lawsuit on December 17, 2012. The signatures of the court and attorneys for the parties—the City, the Conservancy, and the Coastal Commission—are also dated December 17, 2012. The settlement, which resolved the City's claim for attorney fees and costs, provided that the Conservancy

---

[4]    MTC disputed this fact to the extent it represented the City Council unanimously voted to add the Override Lawsuit to the closed session agenda. MTC argued the meeting minutes (which stated there had been a unanimous vote) were not consistent with Hogin's closed session report in the later open session (wherein she did not mention a vote, unanimous or otherwise).

would pay the City $175,000 (and interest if the sum was paid past a certain date), and further provided that if the Conservancy again attempted and succeeded in obtaining a public works override from the Coastal Commission, the Conservancy would pay the City an additional $200,000.[5]

## 2. *The meeting minutes*

The meeting minutes for the December 10, 2012, meeting recite that "Mayor La Monte called the meeting to order at 6:42 p.m." The minutes contain a section entitled "CLOSED SESSION REPORT," which reflects there were no public comments on closed session items. The minutes state "City Attorney Hogin announced that the Regular meeting convened at 6:00 p.m. at which time the City Council recessed to Closed Session to discuss the following item: [¶] Real Estate negotiation matters pursuant to Government Code Section 54956.8[]" and identify the specific real estate that was discussed. The minutes additionally state, "City Attorney Hogin stated she had received an offer of settlement after the agenda had been posted and that the Coastal Commission was meeting this week and the City's litigation deadlines created a need to take immediate action if the City wished to take advantage of this opportunity to resolve the post-judgment issues in the [Override Lawsuit]. She stated on that factual basis and pursuant to Government Code Section 54954.9(a), on motion by Councilmember Rosenthal and seconded

---

[5]    Another party whose lawsuit was consolidated with the Override Lawsuit for trial also prevailed at trial and on appeal. That party filed a motion for attorney fees, which was denied in its entirety.

7

by Councilmember Sibert, the City Council unanimously added the case to the Closed Session agenda. The Council discussed both items and took no reportable action."

*D. MTC's Opposition and Evidentiary Submissions*

MTC opposed the City's summary judgment motion and argued that the City had not met its burden of producing evidence and that triable issues of material fact existed as to whether the closed session discussion of the Override Lawsuit was properly noticed, whether the matters discussed were proper subjects for closed session, and whether the City Council took reportable action during closed session. In support of its opposition, MTC submitted excerpts from the deposition of Hogin and a declaration from MTC's attorney. It also asked the court to judicially notice materials including the City's meeting minutes for January 14, 2013, and January 28, 2013, and excerpts from the Coastal Commission meeting agendas from 2012 and 2013 (that reflect the Coastal Commission met monthly during those years).

MTC's attorney's declaration attested the attorney watched a video of the December 10, 2012, City Council meeting that the City previously posted on its website. The declaration asserted the video did not include any footage of any open session preceding the City Council's closed session. Counsel's declaration represented the video begins with then-Mayor La Monte stating, "I'd like to call to order the Malibu City Council meeting for Monday, December 10th, 2012. Uh, we had a closed session. Christi, would you like to give us a report?" It then transcribed the statement Hogin made regarding the closed session, as follows: "Sure. Thank you. Mr. Mayor, members of the City

8

Council.  Tonight, our regular meeting convened at 6 o'clock.  At that time, the council was advised that after the posting of the agenda it came to my attention that there was an offer of settlement which the City needed to act on prior to Wednesday when the California Coastal Commission was scheduled to have the closed session.  And on those factual bases, the Council added to the closed session . . . agenda the case of the City of Malibu versus the California Coastal Commission, Los Angeles County Superior Court case no. BS121650.  At that point, the Council recessed to the closed session, . . . discussed both of the items that were on the posted agenda, the one that was . . . posted and the one that was added, and ultimately took no reportable action.  And that concludes my report.  Thank you."

The excerpts from Hogin's deposition included the following pertinent testimony.  Hogin recalled that the closed session on December 10, 2012, began at 6:00 p.m.  The City Clerk, who did not usually attend closed sessions, was not present.  The closed session was held in a conference room on the second floor of City Hall called the Westward Room, which was generally where closed sessions were held in 2012.  Hogin did not have a specific memory as to whether the City Council convened an open meeting in the council auditorium at City Hall before moving into the closed session.  She did, however, assert that all the closed session items that were to be discussed were identified in open session prior to the closed session.  When asked whether the settlement of the Override Lawsuit had been on any City Council agenda prior to December 10, 2012, Hogin clarified, "the litigation wasn't at issue . . . on December 10, 2012, it was the post-judgment attorneys' fees.  That was after the court of appeal had ruled in the city's favor."

9

When asked about the settlement that was before the City Council on the relevant date, Hogin said she had been conveyed a possible settlement by the Coastal Commission the Friday before the meeting, which depended on the Conservancy's willingness to pay for it. The day of the meeting, she received a specific offer from the Conservancy, which she said she would take to the City Council. Hogin was told the Coastal Commission was meeting later the same week, and had put the item on the agenda in hopes that the City would accept their offer. The City's deadline to file the attorney fees motion had been extended by stipulation to around December 20. The City Council's counteroffer to the other parties in the Override Lawsuit to settle the fees and costs, which was "something different" than the settlement offer the City Council had received, included a proviso stating that if the Conservancy invoked the override provision again, the City was to receive notice and the Conservancy was to pay the City an additional $200,000. That payment was not for attorneys' fees, but it was instead a payment of money for general purposes, which the City Council regarded as something like a war chest. Neither the original agenda for the meeting nor the amended agenda identified the Override Lawsuit as a topic to be discussed in closed session.

### E.    *The Trial Court's Summary Adjudication Order*
The court issued a tentative ruling, heard argument from counsel, orally modified the tentative, and then adopted it as the order of the court. The court's order denied the City's request for summary judgment, but it granted in part the request for

10

summary adjudication.[6]  The court explained MTC's remaining cause of action alleged three separate violations of the Brown Act, each of which was a distinct wrongful act and each of which was therefore a proper subject for summary adjudication.  The court identified the alleged violations as follows: (1) violation of section 54954.2 by not adding the settlement offer to the noticed agenda; (2) violation of section 54956.9 by considering the settlement offer in closed session; and (3) violation of section 54957.1 by not publicly reporting approval of the settlement offer after the closed session.

Addressing first the request to summarily adjudicate the alleged failure to properly add the settlement offer to the closed session agenda, the court analyzed the issue in two parts: (1) whether there was "immediate need" for the City Council to discuss the matter such that an exception to the agenda requirement applied; and (2) whether the City Council had publicly announced in open session that the settlement, which was not disclosed on the posted agenda, would be discussed in closed session before recessing to closed session.

The court stated the City made a prima facie showing of compliance with the statute by presenting evidence demonstrating Hogin advised the City Council during the meeting's initial open session that she had received an offer of settlement after the agenda's posting and that immediate action

---

[6]  In doing so, the court took judicial notice of, among other things, the City Council's meeting minutes from December 10, 2012, and January 14, 2013; the December 12, 2012 agenda of the Coastal Commission; and excerpts from other Coastal Commission meeting agendas.

11

was needed because of the City's litigation deadlines and the Coastal Commission's deadline. The court deemed MTC's arguments in opposition—that the City Council could have delayed the discussion to a subsequent meeting without prejudice—conjecture. The court found the undisputed facts raised only a legal question as to whether the City met the requirements for adding the litigation to the closed session agenda and the court concluded the City did because the timing of the settlement offer and the various deadlines meant that if the City accepted the settlement, it would not need to spend funds on a motion for attorney fees and would avoid the risk of losing the settlement offer. The court determined those concerns reasonably amounted to a need to take immediate action.

Turning to the second prong of this first issue, whether the City Council publicly announced in open session that the item would be discussed in closed session before recessing to the closed session, the court concluded there was a triable issue of material fact. It accordingly denied the City's motion for summary adjudication of the section 54954.2 claim.[7]

---

[7] During the hearing on the motion, the court addressed its overall conclusion in the tentative ruling, stating, "So that we're clear . . . I am granting summary adjudication of two issues but not the third, and the third issue is two pronged. So even though I concluded there's undisputed evidence of immediate need, you're still going to have to try that issue along with the proper . . . [¶] . . .[¶] identification." The City interrupted, stating that was a legal issue, and the court could resolve it. The court responded, "You can argue to the [independent calendar] court that that's a legal issue" and opined that its view on that point would not be law of the case.

The court then considered MTC's claim that the settlement offer was not a proper matter for closed session discussion regardless.  The court found the City made a prima facie showing it complied with section 54956.9, subdivision (b) because the City Council held a closed session meeting on the advice of Hogin to discuss and take action on a settlement offer received for attorney fees in the Override Lawsuit.  The court disagreed with MTC's argument that there was no "pending litigation," only a potential attorney fees motion, because the parties in the Override Lawsuit still had to litigate the issue of attorney fees.  The court also found unpersuasive MTC's argument that there were triable issues of material fact as to whether the settlement agreement's terms were actually for attorney fees in light of the settlement's contemplation of the $200,000 contingent payment.  Under the circumstances, the court believed the exact terms of the settlement did not affect its view that the settlement resolved the remaining attorney fees dispute in the Override Lawsuit.  Finally, the court rejected MTC's argument that there was a triable issue concerning whether signing a pre-negotiated attorney fees settlement in open session would have prejudiced the City's position in the Override Lawsuit because the court concluded the City was entitled to ask its attorney questions about the negotiation and preserve the attorney-client privilege.  The trial court thus granted summary adjudication and determined the Override Lawsuit was a proper subject matter for closed session.

On the third and final potential violation the court identified as raised by MTC's remaining cause of action, the court granted summary adjudication and found the City did not violate section 54957.1 when announcing it took no reportable action in

the closed session on December 10, 2012. The trial court concluded the City made a prima facie case the settlement was not finally approved during the closed session meeting and MTC presented no contrary evidence raising a triable issue of material fact.[8]

### F. The Bench Trial on the Remaining Claim

The matter was transferred to a different courtroom for trial on the sole remaining Brown Act question, i.e., whether the City Council publicly announced in open session that the item would be discussed in closed session before recessing to the closed session. In defining the issue that remained for decision, the parties disagreed about the scope of the trial court's prior summary adjudication findings.

The City argued the findings split the public notice issue, concluding on one hand there was a need to take immediate action on the settlement offer but finding a triable issue on whether it had publicly announced in open session the matter to be discussed in closed session. MTC, on the other hand, argued the tentative summary adjudication ruling had been orally modified at the hearing such that both of those issues needed to be tried.

The court to which the case had been transferred reviewed the summary adjudication order and found the prior judge "ruled therein that the attorney's fee discussion at the December 10, 2012[,] City Council meeting came within the exception of Section

---

[8]     MTC filed a writ petition in this court seeking review of the trial court's summary adjudication orders. We denied the petition.

54954.2(b) to the Brown Act for actions with a 'need to take immediate action.' Therefore, the only issue remaining for decision at the trial of this matter is whether the attorney's fee offer for the Override [Lawsuit] was not properly added to the December 10, 2012 agenda under section 54954.2 of the Brown Act by identifying it in open session as a closed session agenda item before the closed session in which it was discussed."

The City then filed another motion for judgment on the pleadings, arguing the remaining issue in the case was moot and there was no actual controversy between the parties. MTC opposed the motion, and the trial court denied it, finding in part that the operative petition stated a cause for declaratory relief. The court accordingly set a bench trial to resolve the remaining claim.

The parties agreed to conduct direct testimony via declaration and cross-examination via live testimony. Accordingly, in advance of trial, the City submitted declarations from Hogin, the individuals who were serving on the City Council at the relevant time, and the individual who served as City Clerk at the time. The trial court admitted six exhibits at trial: the original and amended agendas for the meeting on December 10, 2012; the minutes of the meeting; the videotape of the meeting and a transcription of the videotape; and the minutes from the meeting on January 14, 2013. The court also heard testimony from all of the declarants, as well as a member of the public who attended the later open session on December 10, 2012.

### 1. *Hogin's testimony*

In her declaration, Hogin stated she received a settlement offer regarding the Override Lawsuit on her way to City Hall on

15

December 10, 2012.  The timing of the offer and the fact that the Coastal Commission was meeting approximately 36 hours later meant the City needed to add the issue to the December 10, 2012, agenda in order to provide a timely response to the offer.

Just before the City Council meeting convened, Hogin went to the reception area of Malibu City Hall to determine whether there were any members of the public interested in attending.  There were none.  When she returned from the reception area, Hogin informed the City Council there were no members of the public waiting to attend and the mayor called the meeting to order.

Hogin informed the City Council she was requesting it add an item to the closed session agenda before it recessed to closed session.  She explained she received an offer of settlement of the attorney fee dispute in the Override Lawsuit that afternoon, well after the posting of the City Council's meeting agenda.  Hogin also told the City Council that the Coastal Commission, which meets once per month, was meeting two days later and the attorneys for the Coastal Commission had requested a response to the settlement offer before that meeting.  She also explained the City's motion for fees was due later that month.  Based on the facts presented, the City Council unanimously added the case to the closed session agenda.  At that point in the meeting, after the regular meeting had been called to order and the settlement had been added to the closed session agenda, the City Council recessed into closed session.

According to Hogin, when the City Council meeting began at 6:00 p.m., the council was meeting in open session.  No member of the public attended the open session portion of the meeting at 6:00 p.m., and only the Councilmembers, Hogin, and

16

the City Manager were present. During the open session portion of the meeting, Hogin announced what would be discussed in closed session. After the closed session, the Council reconvened in open session and, aware the City did not videotape the portion of the meeting that preceded the closed session, Hogin recited the time at which the meeting began and stated that the City Council had added an item to the closed session agenda. By making the statements, she intended to inform the public and the City Clerk of what took place so it would be included in the minutes.

Hogin also testified that since her deposition in the case, she had remembered that both the initial open session and the subsequent closed session took place in the Westward Room. She clarified her previous statement that she went to the reception area of City Hall to determine if any members of the public were interested in attending the meeting by explaining she went to the reception area on the main floor of City Hall, which was the second floor of the building.

### 2. *Other testimony*

Lisa Pope (Pope), who served as the City Clerk for the City on December 10, 2012, submitted a declaration stating that when a regular or special meeting of the City Council convened in the Westward Room, she was responsible for placing a written notice in a conspicuous place in the City Hall lobby to assist members of the public who wanted to attend the public portion of the meeting prior to the closed session. Pope did not attend closed sessions, which were held only on an as-needed basis. During City Council meetings, agenda items denominated "closed session report" would involve the City Attorney stating the time the meeting convened, stating anything that occurred before the recess to

17

closed session, and making a closed session report or stating no reportable action was taken.

Pope attended the portion of the December 10, 2012, meeting that started after the closed session in her capacity as City Clerk. She prepared the agenda and the minutes for the meeting. The agenda provided notice that a closed session item would be taken up at 6:00 p.m. and included a section for hearing public comment on closed session issues, which Pope included to communicate to the public that they were invited to that portion of the meeting before the recess to closed session.

On cross-examination, Pope explained how she placed a written notice in the City Hall lobby on the day of the City Council meeting in question. Pope testified that 30 minutes before the meeting, she placed the notice in a framed document holder standing on a desk near the front door of the second floor by a telephone that allowed the public to call the Westward Room. Pope did not place the notice in the public notice box outside of City Hall.[9]

The five individuals who were members of the City Council at the time of the meeting, Joan House, Lou La Monte, Skylar Peak, John Sibert, and Laura Zahn, also provided direct testimony via declaration. All the declarations asserted the respective councilmembers did not have specific recollections of the order of events on December 10, 2012. The councilmembers declared they trusted Hogin to walk the City Council through the

---

[9]    John Mazza, a member of the public who attended the meeting on December 10, 2012, testified he did not see a notice regarding the closed session meeting in the Westward Room on the first floor of City Hall that night.

required steps to add any items that needed to be added to the agenda and appropriately convene a closed session, they had no reason to believe the December 10, 2012, meeting was any different, and they had no reason to doubt the accuracy of the minutes.

On cross-examination, House explained that to reach the room in which the City Council held closed sessions, you passed a reception desk, walked through a door, and walked through administrative offices to the conference room. House represented the City Hall receptionist was on the second floor of the building. House also estimated the Westward Room was approximately 12 feet by 8 feet.

### 3.    *The trial court's visit to City Hall*

Following the close of testimony, the trial court granted MTC's motion to have the trial court visit the Westward Room, City Council chambers, the method of access to those locations, and the entrances to City Hall. The court subsequently visited the site, and the visit was videorecorded.[10] The video depicts the judge and counsel walking into City Hall and passing a reception desk just past the entrance. They walk through a glass door, then turn to walk through another door, which has a "STAFF ONLY" sign next to it. They walk down a long hallway, until they reach and enter a small conference room with a table and chairs. The video also depicts them walking from the reception area, down a flight of stairs, and into the main City Council chambers.

---

[10]    Due to some technical difficulties, only video, not audio, was recorded.

19

In post-trial briefing, MTC confirmed it was no longer seeking injunctive relief because the injunction issue was moot. In support of this assertion, MTC attached City Council agendas from June, July, and August 2019, which reflect that during that time period, the City Council called its meetings to order in council chambers before recessing to the Westward Room for closed session.

### 4. *The trial court's verdict*

The trial court issued a statement of decision in which it stated the only issue remaining for the court to decide was whether the City had publicly announced in open session the matter to be discussed in closed session. The court then made the following findings.

The City Hall reception area was accessible to the public at the time of the meeting. Hogin went to the public area just before the meeting commenced to see if any members of the public wished to attend and speak, and she did not see any. The location of the closed session was posted on the agenda and amended agenda. The Brown Act did not require the closed session to be held in a publicly accessible area, and anyone who was present in the publicly accessible area when Hogin went to the area before the meeting could have followed her to the Westward Room.

The meeting began with a brief open session at 6 p.m., as noted in the minutes. During that open session, Hogin requested the City Council add an item to the closed session agenda. Hogin explained she had received an offer of settlement in the Override Lawsuit that afternoon and the Coastal Commission, which met once per month, had requested a response to the offer prior to the

meeting they were holding two days later. Hogin also explained the City's motion for fees was due later that month. Based on those facts, the City Council unanimously voted to add the Override Lawsuit to the closed session agenda.

The court found the Override Lawsuit was properly placed on the closed session agenda for the meeting because it was adequately described by Hogin to the City Council in open session before they voted to make it a closed session agenda item. The court additionally found the timeline of communication of the settlement offer and the Coastal Commission's planned meeting created an immediate need for action and the City Council unanimously voted to place the matter on the closed session agenda based on the information provided to it. The City Council then went into the closed session and properly discussed the Override Lawsuit, as previously established in the summary adjudication order.

The court found there was no conflict in the minutes between the statement that the meeting was called to order at 6:42 p.m., and Hogin's statement that the regular meeting convened at 6:00 p.m. and then recessed into closed session. The court concluded the discrepancy was addressed by Hogin's explanation that she was aware the open session prior to the closed session was not recorded and she repeated her announcement when the meeting re-opened so it would be reflected on the video and audio recording of the remaining portion of the open session.

The trial court found Hogin's testimony credible and consistent with other evidence introduced at trial. The court further found there was no credible testimony or other evidence

21

that contradicted Hogin's testimony. The court accordingly entered judgment in the City's favor.

## II. DISCUSSION

We hold the trial court's resolution of MTC's substantive and procedural Brown Act challenges to the City's actions was correct.

Substantively, the offer to settle the attorney fee dispute in the Override Lawsuit was a proper topic for closed session discussion under the exception for meetings with legal counsel regarding pending litigation. Though the settlement term providing the Conservancy would pay the City if certain events occurred in the future did not directly compensate the City for fees it incurred in the lawsuit, it was nevertheless part and parcel of the settlement agreement and its inclusion did not violate or circumvent any laws.

Procedurally, the City Council's addition of the proposed settlement of the Override Lawsuit to its closed session agenda did not contravene the Brown Act. The addition of the agenda item after the normal deadline to add items to the agenda was justified by the Brown Act's need for immediate action exception: the City was operating within tight time constraints given both the timing of the Coastal Commission meeting and its own deadline to file a motion for attorney fees. MTC's suggestion that there were other actions the City Council could have taken short of noticing a late closed session agenda item does not negate the City's showing of need for immediate action. In addition, substantial evidence supports the trial court's conclusion that Hogin announced the addition of the Override Lawsuit to the closed session agenda in open session before the City Council

22

recessed to closed session. MTC's complaints about the location and timing of that announcement reveal only that more could have been done to provide robust notice to the public—not that the notice provided contravenes the Brown Act's requirements.

## A. Brown Act Basics

"The Brown Act is designed to encourage public participation in government decisionmaking by requiring that public agencies take action and conduct deliberations openly." (*Coalition of Labor, Agriculture & Business v. County of Santa Barbara Bd. of Supervisors* (2005) 129 Cal.App.4th 205, 208.) "To that end, the Act requires the meetings of such bodies to be open to the public, held on a regular schedule, and conducted in accordance with an agenda available in advance of the meeting. (§§ 54953, 54954, 54954.2.) Conversely, the Act prohibits action on items not placed on the agenda and severely restricts the type of actions such bodies can take in private session. (§§ 54954.2, 54956.7–54957.)" (*Olson v. Hornbrook Community Services Dist.* (2019) 33 Cal.App.5th 502, 514.) "Statutory exceptions authorizing closed sessions of legislative bodies are construed narrowly and the Brown Act . . . is construed liberally in favor of openness in conducting public business." (*Shapiro v. San Diego City Council* (2002) 96 Cal.App.4th 904, 917.)

## B. The Override Lawsuit Was a Proper Issue for Closed Session

### 1. Standard of review

"In reviewing an order granting summary adjudication, 'we apply the same standard of review applicable on appeal from a grant of summary judgment. [Citation.]'" (*Rehmani v. Superior*

23

*Court* (2012) 204 Cal.App.4th 945, 950.)  We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained.  (*Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 716-717.)  We liberally construe the evidence in support of the party opposing summary adjudication.  (*Ibid*.)

### 2.      *Analysis*

"[S]ection 54956.9 . . .  creates an exception to the Brown Act's open meeting requirements for meetings with legal counsel regarding pending litigation."  (*Shapiro v. Board of Directors* (2005) 134 Cal.App.4th 170, 179-180.)  It allows a local agency legislative body to hold "a closed session to confer with, or receive advice from, its legal counsel regarding pending litigation when discussion in open session concerning those matters would prejudice the position of the local agency in the litigation." (§ 54956.9, subd. (a).)  Under section 54956.9, litigation shall be considered pending when, among other things, "[l]itigation, to which the local agency is a party, has been initiated formally." (§ 54956.9, subd. (d)(1).)

The evidence presented in connection with the summary adjudication motion established the Override Lawsuit was, unquestionably, litigation that had "been initiated formally" by the time of the City Council meeting on December 10, 2012.  It is also undisputed that the City Council discussed the settlement offer received from the Conservancy during the closed session meeting.[11]  As the attorney fees issue was still being actively

---

[11]      The record indicates the City Council discussed adding a proviso to the settlement agreement that would require the

litigated by the parties, the City Council and Hogin could reasonably determine that discussing the terms of the settlement, and a possible counteroffer, in open session would have prejudiced their position.

MTC does not contest the propriety of the City Council discussing the Conservancy's offer to settle the attorney fees dispute for a sum certain in closed session. It does, however, contend that the City Council's discussion of another term of the settlement agreement in closed session—the contingent $200,000 to be paid if the Conservancy again sought and obtained a public works override from the Coastal Commission—was improper for a variety of reasons, none of which is persuasive.

First, MTC argues the contingent payment settlement term was insufficiently related to the Override Lawsuit. This takes too myopic a view of the settlement and the pending litigation exception. While the City Council's ability to confer with counsel in closed session is not unfettered, the statute permits conferring regarding pending litigation (§ 54956.9, subd. (a)) and the contingent payment satisfies that "regarding" requirement; it was a proposed term of the attorney fees settlement and one directly related to the substance of the Override Lawsuit.

The case on which MTC relies to argue the contrary, *Shapiro*, *supra*, 96 Cal.App.4th 904, does not dictate a different conclusion. *Shapiro* involved a question about the scope of closed session discussions regarding real estate transactions and held "[t]he scope of the permissible discussion in the closed sessions should be defined by the notice given in the agenda and the

Conservancy to pay the City a certain sum if it later sought to invoke the same legal provision that led to the Override Lawsuit.

25

public announcements, together with the rule against discussing items not identified in the agenda." (*Id.* at 924.) The City Council's actions did not run afoul of this principle. Hogin's request that the City Council discuss the settlement of the Override Lawsuit's attorney fees dispute in closed session under the immediate need exception sufficiently described the matter to be discussed. That the City Council proposed a settlement term that did not directly compensate it for the fees it incurred in the Override Lawsuit, but instead served as a safeguard against similar actions in the future, does not mean it exceeded the scope of that notice. To the extent MTC complains the settlement could not be discussed in closed session under *Shapiro* because it was not included on the initial agenda, the argument fails because no exception to the regular agenda notice requirements was invoked or at issue in that case.

Relying on another case, *Trancas Property Owners Assn. v. City of Malibu* (2006) 138 Cal.App.4th 172, MTC also contends discussing the contingent payment in closed session was improper because it was an attempt to implement nonlitigation policy decisions. In *Trancas*, the Court of Appeal faulted closed session approval of a settlement agreement that "in essence grant[ed] Trancas a zoning variance for [a] 32-unit project" because it saw the approval as circumventing open meeting rules. (*Id.* at 187 [the "implied exception for adoption of litigation settlements in closed session does not embrace such agreements as provide for governmental decisions without legally required public hearings . . ."].) Here, by contrast, the contemplated contingent payment term in the settlement agreement did not independently require a public hearing, nor is there any indication it reversed a prior decision by the City Council. Put

26

differently, *Trancas* does not broadly prohibit settlements that contain anything other than straight monetary payments. Rather, it holds cities may not "decide upon or adopt in closed session a settlement that accomplishes or provides for action for which a public hearing is required by law, without such a hearing." (*Ibid*.) That, of course, is not what happened here.[12]

Finally, MTC complains the City Council could not avail itself of the pending litigation exception to the open meeting requirements because its discussion of the contingent payment term in open session could not have prejudiced its position in the Override Lawsuit. The argument is unpersuasive in light of the ongoing settlement negotiations. The attorney fees dispute in the Override Lawsuit was ongoing when the City Council met with Hogin in closed session, and a discussion of settlement terms would implicate counteroffer terms that may be acceptable and possible compromises the City Council might accept. Conducting such a discussion in open session would naturally prejudice a party to pending litigation, as anyone could report the discussion back to the other parties.[13]

---

[12] MTC protests that the settlement agreement touched upon "how to respond to future [Conservancy] plans for its parklands in Malibu." That reads terms into the settlement agreement that are not there. The contingent payment provision did not purport to dictate how the City would respond to any future effort by the Conservancy to use the override exception. It merely provided the City would demand payment pursuant to the settlement agreement if the conditions were met.

[13] That the City would presumably not have obtained a contingent fee term through a fee motion is irrelevant as it does not affect the parties' ability to agree to the term in a settlement.

On this record, there is no basis to conclude the City included terms in the settlement of the Override Lawsuit to circumvent Brown Act open meeting rules. The trial court correctly concluded that the Override Lawsuit settlement was a proper subject for closed session.

> C. *The City Did Not Violate Brown Act Procedural Rules in Adding the Override Lawsuit to the Closed Session Agenda*
>
> 1. *Statutory requirements*

Section 54954.2 provides that "[a]t least 72 hours before a regular meeting, the legislative body of the local agency, or its designee, shall post an agenda containing a brief general description of each item of business to be transacted or discussed at the meeting, including items to be discussed in closed session. A brief general description of an item generally need not exceed 20 words. The agenda shall specify the time and location of the regular meeting and shall be posted in a location that is freely accessible to members of the public . . . ."[14] (§ 54954.2, subd. (a)(1).)

The Brown Act also provides for exceptions to this general advance notice rule. The exception relevant for our purposes is the one that allows a legislative body to "take action on items of business not appearing on the posted agenda" when the legislative body determines "there is a need to take immediate action and that the need for action came to the attention of the local agency subsequent to the agenda being posted as specified

---

[14] Though section 54954.2 has been amended since 2012, the pertinent provisions have remained the same.

28

in subdivision (a)."  (§ 54954.2, subd. (b)(2).)  "Prior to discussing any item pursuant to this [immediate action exception], the legislative body shall publicly identify the item."  (§ 54954.2, subd. (b).)

The City does not dispute the Override Lawsuit was not listed on either the original or amended agenda as a topic for closed session discussion.  It does, however, contend the Override Lawsuit was properly added to the agenda pursuant to the immediate action exception (§ 54954.2, subd. (b)(2)).  MTC argues here, as it did below, that the City cannot rely on the exception both because it did not establish there was an immediate need for it to take action on the settlement offer and because it did not publicly identify the Override Lawsuit prior to discussing it in closed session.  Neither argument is correct.

### 2. *Need for immediate action*

As we have already described, the City's summary adjudication motion was granted in part by one judge (the Honorable James Chalfant) and the matter was then reassigned to another judge (the Honorable Holly Fujie) to conduct a trial to resolve the remaining claim.  MTC contends on appeal that Judge Chalfant's summary adjudication order did not resolve whether the City properly concluded there was a need for immediate action on the Override Lawsuit fee settlement and instead left that issue to be tried by Judge Fujie.  MTC thus argues it was erroneously deprived of a trial on that issue because Judge Fujie believed Judge Chalfant *did* decide the immediate action exception was satisfied.  We need not resolve whether MTC has the right view of the Judge Chalfant's order because our review is

29

de novo and (as we next explain) the trial court reached the correct result—making any procedural error harmless.

The meeting minutes establish Hogin stated in her closed session report that she had received an offer of settlement in the Override Lawsuit after the meeting agenda had been posted and advised the City Council it needed to take action before the Coastal Commission's closed session meeting approximately two days later. The minutes further recite the City Council added the matter to the closed session agenda for that reason. The City also presented evidence establishing the City's deadline to file a motion for attorney fees in the Override Lawsuit was December 21, 2012, the Coastal Commission did, in fact, meet on December 12, 2012, and the Coastal Commission had placed the Override Lawsuit on its closed session agenda.

We reject MTC's contention that the judicially noticed meeting minutes were an improper evidentiary basis to satisfy the City's initial summary adjudication burden. Settled law establishes "[t]he official minutes of a board meeting are prima facie evidence of the facts stated therein. [Citations.]" (*Le Strange v. City of Berkeley* (1962) 210 Cal.App.2d 313, 327.) That is not to say, however, that meeting minutes are conclusive proof of facts therein; minutes can be rebutted by other evidence. (*Ibid.*) Indeed, MTC did rebut some of the recitations in the minutes here by relying on video footage of the City Council meeting that demonstrates Hogin did not make statements during the open meeting in City Council chambers about litigation deadlines or the City Council's vote to add the settlement to the closed session agenda. But even putting those rebutted points aside, the other undisputed evidence of facts presented to the City Council was sufficient to allow the council

30

to determine immediate action was warranted. The excerpts from Hogin's deposition, which MTC presented in opposition to the City's motion, further establish Hogin had been told the Coastal Commission put the Override Lawsuit on its agenda in hopes that the City would accept the settlement offer prior to the Coastal Commission's meeting, and the City's deadline to file its fee motion was around December 20. This was sufficient to establish there had been a need for immediate action on the settlement offer, and to shift the summary adjudication burden of production to MTC.[15]

MTC nevertheless argues here, as it did below, that the City Council's conclusion that it needed to take immediate action on the settlement offer was inconsistent with Hogin's statement in her closed session report that the City Council did not take any reportable action. We see no contradiction. The City's receipt of a settlement offer and the indication that the party proffering the settlement was hoping for a speedy conclusion to the matter, in combination with the City's approaching motion deadline, created a need to immediately decide what to do in response to the offer and, as it turned out, to develop a counteroffer and authorize its

_____

[15]     Though MTC, not the City, presented excerpts from the Hogin deposition to the trial court, a court "shall consider all of the evidence set forth in the papers, except the evidence to which objections have been made and sustained by the court, and all inferences reasonably deducible from the evidence . . . ." (Code Civ. Proc. § 437c, subd. (c).) A trial court thus properly considers all of the evidence contained in the papers, including evidence submitted by the party opposing summary adjudication, when determining whether the burden of proof shifted. (*Villa v. McFerren* (1995) 35 Cal.App.4th 733, 750-751.)

31

attorney to make the counteroffer. That none of those acts are reportable acts under the statute, unlike, for example, giving final approval of the settlement of a pending action, says nothing about the need to perform them immediately. (§ 54957.1 [enumerating acts taken in closed session that must be publicly reported].)

MTC also proposes a variety of alternative decisions the City Council could have made. It contends the City Council could have included the settlement offer on its December agenda, like the Coastal Commission did; could have called a special meeting for a time after its meeting on December 10, 2012, but before the Coastal Commission's meeting; or could have just settled the litigation at some later date because the Coastal Commission was meeting monthly during the relevant time. None of these arguments are persuasive because all of them presuppose the City could only show a need for immediate action if there existed no potentially feasible alternative. All the Brown Act requires is that the City Council find a "need for immediate action" and, as the trial court observed, this does not require the City Council to have exhausted every possible alternative to adding the item to the agenda after the deadline. To the contrary, the City Council could reasonably determine it was in the City's best strategic interest to address the settlement proposal when it did (which allowed prompt proposal of a counteroffer). The City thus presented prima facie evidence that there was an immediate need for action, and MTC presented no evidence demonstrating a triable issue of material fact to the contrary.[16]

_____

[16]     MTC's arguments regarding other actions the City Council could have taken instead are all conjecture, and all ignore the

MTC's remaining arguments also lack merit. MTC parses the components of the settlement agreement and separately addresses them to contend there was no need for immediate action on the Conservancy's "possible future resubmittal" of plans to the Coastal Commission. In doing so, MTC again reads terms into the settlement agreement that are not there, and we reject the argument for the same reasons we have already given in connection with our holding that the settlement agreement was a proper topic for closed session consideration. MTC further argues there was no need for immediate action because the City Council should have known it would need to discuss the matter at the meeting prior to receiving the settlement offer given its attorney fees motion filing deadline. The argument presumes the City Council would have had to further authorize the preparation and filing of the motion in the absence of a settlement offer from the Conservancy. We know of no rule requiring it to do so.

### 3.   *The City provided adequate public notice of the addition to the closed session agenda*

"In reviewing a judgment based upon a statement of decision following a bench trial, we review questions of law de novo. [Citation.] We apply a substantial evidence standard of review to the trial court's findings of fact. [Citation.] Under this deferential standard of review, findings of fact are liberally construed to support the judgment and we consider the evidence in the light most favorable to the prevailing party, drawing all reasonable inferences in support of the findings. [Citation.]"

---

City's legitimate interest in pursuing its own litigation strategy, not MTC's.

33

(*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981.) "The testimony of a single witness may be sufficient to constitute substantial evidence." (*Lui v. City and County of San Francisco* (2012) 211 Cal.App.4th 962, 969.)

To satisfy the requirements of the immediate action exception, "the legislative body shall publicly identify the item" before any closed session discussion pursuant to the immediate action exception. (§ 54954.2, subd. (b).) Section 54954.2 does not further define what constitutes "public[] identif[ication]," but section 54957.7 addresses general disclosure of items to be discussed at closed session. It requires that "[p]rior to holding any closed session, the legislative body of the local agency shall disclose, in an open meeting, the item or items to be discussed in the closed session." (§ 54957.7, subd. (a).) It further provides "[t]he announcements required to be made in open session pursuant to this section may be made at the location announced in the agenda for the closed session, as long as the public is allowed to be present at that location for the purpose of hearing the announcements." (§ 54957.7, subd. (c).)

MTC does not challenge the factual findings the trial court made following the bench trial and accepts those facts as effectively undisputed. We likewise defer to the trial court's factual findings and therefore conclude the City publicly announced its intention to add the item to its closed session agenda before recessing into closed session, as required by the Brown Act. The agenda for the meeting on December 10, 2012, identified the location of the closed session as City Hall's Westward Room. As the trial court found, Hogin went into the reception area to check for members of the public prior to the commencement of the meeting. Additionally, former City Clerk

34

Pope placed a notice in the City Hall lobby, near a telephone that allowed the public to call into the Westward Room, to help members of the public who wanted to attend the initial portion of the meeting to find the Westward Room.  The session was thus open to the public, and the public was provided assistance in finding its location.  There is no evidence in the record demonstrating any member of the public attempted to be present before commencement of the closed session but was unable to do so.  In the absence of any such evidence, MTC's argument that members of the public could have missed Hogin's appearance in the reception area or been waiting in alternate locations is mere conjecture.

MTC argues the City nonetheless failed to comply with the public announcement requirement because it imposed various obstacles to public access.  Specifically, MTC contends the meeting agenda was misleading and the Westward Room was not sufficiently open to the public given its size and location.  The only authority MTC cites for this proposition is out of state case law that analyzed a situation in which members of the public were barred from entering the room in which a meeting was being held due to insufficient seating.  (*Garlock v. Wake County Bd. of Educ.* (2011) 211 N.C.App. 200, 226 [members of the public were only "permitted to enter" after some staff members left and vacated seats].)  The case is neither binding nor apposite.

MTC also asserts a series of other arguments in its effort to persuade the City did not comply with the public announcement requirement.  It contends members of the public interested in the Override Lawsuit would not have known to attend the closed session because it was not identified on the agenda.  It argues the City Council's announcement cannot qualify as a "public"

35

announcement given the location in which it was made. It even contends, in its reply brief, that in order to comply with the Brown Act requirements, the City Council needed to have provided a diagram or directions specifying the location of the Westward Room in the City Hall complex.[17]

These arguments again presuppose, incorrectly, that such measures are required by the Brown Act. Though the City concedes no error with regard to its actions in this case, it has since changed the format of its agenda and begun holding the initial open session in Council Chambers prior to recessing for closed session. While these changes arguably improve the effectiveness of the City's public notice procedures, neither the changes nor MTC's arguments establish that what the City did in this case was so deficient as to violate the requirements of the Brown Act.

---

[17] To support this statement, MTC extrapolates from statements made in *Moreno v. City of King* (2005) 127 Cal.App.4th 17, 26, where the court concluded section 54956's requirement that the notice of a special meeting "specify" the "the business to be transacted or discussed" referred back to section 54954.2's requirement that an agenda provide a "brief general description of each item of business to be transacted or discussed." *Moreno's* holding neither states nor implies that "specify[ing]" the location of a closed session meeting requires more than identifying the address and room where the meeting would be held.

DISPOSITION

The judgment is affirmed.  Respondents shall recover their costs on appeal.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



BAKER, Acting P. J.


We concur:



MOOR, J.



KIM, J.